PONDER, Judge.
Plaintiff appealed from a judgment finding defendant the owner of disputed property in this petitory action.
The issue is the application of the “alter ego” theory and agency principles to the defendant, who is record owner of the property in question.
We affirm.
When Amalgamated Meatcutters and Butcher Workmen of America was granted a charter in 1954, the membership of the union consisted only of workers from the Southdown Sugar Refinery in Terrebonne Parish. In 1960, the members of the union organized and incorporated the Union Citizen’s Club (U.C.C.), a non-profit corporation, without capital stock, with the purpose of improving and encouraging community progress in Terrebonne Parish. There was some conflicting testimony as to whether the U.C.C. was formed either to buy property for the union to build a meeting hall or to provide for the members from South-down Refinery in case the union would leave the parish.
An extra dollar was collected in the monthly union dues check-off and transferred to the U.C.C. account as dues. The U.C.C. used the money to buy rental property. In 1966 pursuant to a U.C.C. resolution, the U.C.C. purchased the property involved in this suit. After the rent began coming in and the union dues began to rise, the U.C.C. dues were reduced and eventually discontinued. There is some conflict over whether Southdown Refinery was the only plant to deduct and pay the U.C.C. dues.
The U.C.C. initially met after regular union meetings. Later, however, all matters concerning U.C.C. property and bank accounts were taken care of at the union meeting. The minutes of the union met-ings from February, 1969 to February, 1978, indicate that a financial report of the union’s accounts and the U.C.C.’s accounts were given at the meetings. The officers of the union also served as the officers of the U.C.C.
*373 After the U.C.C. was formed, employees of other refineries began to join Local-1476. When the Southdown Refinery closed in 1978, the Local no longer existed in Terre-bonne Parish. U.C.C. meetings were again separately held by former Southdown employees. New operational guidelines were established.
The audit reports of the Local-1476 for the period of 1970 to 1977 listed the property in question and the U.C.C. bank account as assets. Bond questionnaires for the Local-1476 also listed the property as an asset of the union with title in the U.C.C. The trial court held that the Local and the U.C.C. did not have identical memberships, had separate bank accounts and separate minutes and had held separate meetings except for a four year period. The U.C.C. was found to be a corporate entity separate from the Local and the title owner of the property in question.
Plaintiff argues that the interests of justice require the application of the “alter ego” theory so as to disregard the corporate entity of the U.C.C. on the basis that the U.C.C. was not conducted as a separate entity. We disagree.
A corporation is a distinct entity from all the members who compose it. Louisiana Civil Code Article 435.[1] The estates and rights of a corporation belong exclusively to the corporation and not to its members. Louisiana Civil Code Article 436.[2]
However, when the members fail to conduct a corporation on a separate footing, the court may ignore the corporate entity and hold individual members liable to third parties. In such a situation, the corporation is referred to as the “alter ego” of its members. Kingsman Enterprises v. Bakerfield Elec. Co., 339 So.2d 1280 (1st Cir. 1976).
The corporate concept plays a beneficial role and should be disregarded only in exceptional circumstances. Johnson v. Kinchen, 160 So.2d 296 (1st Cir. 1964). Plaintiff has not cited a case in which the alleged members of a corporation used the theory to be recognized as owners of property listed in the corporate name. We will not expand the “alter ego” theory to cover the present factual situation.
In the alternative, the plaintiff alleges that the U.C.C. acted only as an agent of the Local-1476 in the purchase and maintenance of the property and must return it pursuant to Louisiana Civil Code Article 3005.[3]
Plaintiff cites Bolding v. Eason Oil Company, 170 So.2d 883 (4th Cir. 1965), affirmed 248 La. 269, 178 So.2d 246, in which corporate minutes were introduced to show that the title owner of the property in question held the property for the corporation. The written minutes, which the court treated as a counter letter, contained a resolution which specifically stated that the title owner would hold the property “in fact only for this corporation.”
There is no evidence of a union resolution which provided that the U.C.C. held the property for the union. There is no written evidence that could be construed as a counter letter. The U.C.C. purchased the property in its own name, rather than in the name of the union, and under the authority of a resolution passed by the U.C.C.
The trial judge must have concluded that the U.C.C. was formed to provide for the Southdown Refinery workers and that they were the only ones who paid dues to the *374 U.C.C. We do not find these factual findings to be manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
For these reasons, we affirm the trial court’s judgment at the appellant’s cost.
AFFIRMED.

. La.Civil Code Art. 435:
“Corporations are intellectual beings, different and distinct from all the persons who compose them.”

. La.Civil Code Art. 436:
“The estate and rights of a corporation belong so completely to the body, that none of the individuals who compose it, can dispose of any part of them.
In this respect the thing belonging to a body, is very different from a thing which is common to several individuals, as respects the share which every one has in the partnership which exists between them.”

.La.Civil Code Art. 3005:
“He is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly.”