431 So.2d 752 (1983)
Jerome S. GLAZER
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 82-C-1853.
Supreme Court of Louisiana.
April 4, 1983.
Rehearing Denied June 10, 1983.
*754 R. Gray Sexton, Baton Rouge, for applicant.
Charles L. Stern, Jr., Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, Harvey H. Posner, Watson, Blanche, Wilson & Posner, Baton Rouge, for respondent.
DENNIS, Justice.
The principal issue in this governmental ethics case is whether a public official can avoid an unlawful conflict of interest by using his wholly-owned and controlled corporation to do what the official is clearly prohibited from doing himself. The Commission on Ethics for Public Employees found a conflict of interest, ordered the public official to resign, and barred him from future public service in that capacity for four years. The court of appeal reversed the commission's order, holding that Sections 1111(C)(2)(d) and 1112(B)(5) of the governmental ethics code do not prohibit business dealings between state mineral lessees and legal entities wholly-owned, controlled and operated by a Mineral Board member. 417 So.2d 456. We reverse. Separate corporate identity is a privilege conferred by law to further important underlying policies, such as the promotion of commerce and industrial growth. Consequently, the privilege may not be asserted for a purpose which does not further these objectives in order to override other significant public interests which the state seeks to protect through legislation or regulation.
*755 No proper use or function is served when separate corporate capacity is used to thwart the strong public interests embodied in the proscriptions of the Code of Ethics for Governmental Employees. Under the circumstances of this case, the actions of the public official's wholly-owned and controlled corporation were his own and not that of a separate person. The Commission correctly found that an unlawful conflict of interest existed. The case will be remanded, however, for further findings and clarification with respect to the sanctions imposed.
Mr. Jerome S. Glazer has been a member of the State Mineral Board since 1972. The State Mineral Board administers the state's proprietary interest in minerals, and has authority to lease for the development and production of minerals, oil, and gas, any lands belonging to the state, or the title to which is in the public. La.R.S. 30:121(D), 124.
Mr. Glazer is also the sole stockholder, chief administrative officer, president, and chairman of the board of Glazer Steel Corporation. His son, Bradford Glazer, a salaried employee, Morris Klein, and an attorney, Warren Goldstein, are the only other members of the board of Glazer Steel. From April 1, 1980 to March 31, 1981, Glazer Steel Corporation made sales on a non-bid negotiated basis to seven companies which held mineral leases with the State of Louisiana for a total sales volume of $458,639.85.[1] After an investigation by the Commission began, Glazer Steel received notification from three of its larger oil company customersExxon, Texaco and Shell Oil Companythat purchases from Glazer Steel Corporation would be discontinued to avoid possible violations of the conflicts of interest provisions of the Code of Ethics, though Glazer Steel continued to solicit business from these three companies. Up to this time and during Mr. Glazer's tenure on the Mineral Board, Glazer Steel Corporation had sold $4,173,423.87 worth of industrial steel products to these three companies.
The Commission on Ethics for Public Employees found that Mr. Glazer, by permitting his wholly-owned and controlled corporation to sell steel to state mineral lessees during his tenure as a State Mineral Board Commissioner, had engaged in conduct constituting a conflict of interest below the ethical standards established for public servants under La.R.S. 42:1111(C)(2)(d) and 1112(B)(5). The Commission required his removal from the State Mineral Board, suspension for four years, and notification of state mineral lessees that had done business with Glazer Steel that payments for services rendered would constitute a violation of La.R.S. 42:1117.
The court of appeal reversed, holding that the activities of Mr. Glazer's wholly-owned and controlled corporation could not be attributed to him personally for purposes of the Code of Ethics for Governmental Employees.
Art. 10 § 21 of the 1974 Louisiana Constitution directed the legislature to enact a code of ethics for all officials and employees of the state and its political subdivisions and to create one or more boards to administer the code. Pursuant to this mandate, the legislature enacted the Code of Ethics for Governmental Employees. La.R.S. 42:1101 et seq. Among its multiple policy objectives are impartiality, fairness and equality of treatment toward those dealing with government; assurance that decisions of public importance will not be influenced by private considerations; maintenance of public confidence in government (wherein enters the matter of appearances); and prevention of use of public office for private gain. La.R.S. 42:1101(B). Cf. Perkins, The new Federal Conflict of Interest Law, 76 Harv.Law Rev. 1113, 1118 (1963).
The Code is not a criminal statute whose aim is the apprehension and punishment of persons guilty of public wrongdoing. Instead, the primary objective of the *756 legislation is to prevent public officers and employees from becoming involved in conflicts of interests. A conflict of interest is a situation which would require an official to serve two masters, presenting a potential, rather than an actuality, of wrongdoing. The wrongdoing does not have to occur in order for a prohibited conflict to exist. A public official may have done no wrong in the ordinary sense of the word, but a conflict of interest may put him in danger of doing wrong. See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 549-50, 81 S.Ct. 294, 309-10, 5 L.Ed.2d 268, 288 (1961). The Code is aimed at avoiding even this danger. For this purpose, the Code of Ethics for Governmental Employees identifies certain types of conflicts of interests and prohibits conduct by public officials which would bring these conflicts into being. Additionally, the Code empowers the Commission on Ethics to determine when a conflict of interest exists and to impose certain sanctions. La.R.S. 42:1134-35, 1141, and 1151-56.
The prohibited conflict of interest situation involved in this case is one in which the public servant receives private compensation from persons having business with his public agency for services rendered by the servant to that person outside the servant's regular government employment. The danger in the conflict, of course, is that the public servant's official dealings with the person may be unduly influenced contrary to the public interest by the public servant's receipt of private compensation from the same person. The danger exists even if the public servant actually performs bonafide services for his outside income. Accordingly, The Code of Ethics for Governmental Employees specifically prohibits any public servant from receiving anything of economic value for or in consideration of services rendered to or for any person if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency. La.R.S. 42:1111(C)(2); 42:1115(A).[2]
There is no doubt that if Mr. Glazer during his tenure on the Mineral Board had personally sold steel products to the state mineral lessees, he would have violated the conflict of interest prohibition embodied in 42:1111(C)(2)(d). It is undisputed that Mr. Glazer is subject to the regulations embodied in this section because he is a public servant subject to the code's strictures, La. R.S. 30:121(D) and 42:1102(18)(b), 1102(19), that the sale of steel constitutes a "service," La.R.S. 42:1102(24), and that the proceeds received from these sales constitute "things of economic value," i.e. money, La.R.S. 42:1102(22). It is also undisputed that state mineral lessees are persons who have or seek to obtain contractual or other business or financial relationships with the State Mineral Board, and thus Mr. Glazer could not sell steel to state mineral lessees and avoid a conflict of interest. La.R.S. 42:1111(C)(2)(d); 42:1115(A). Therefore, if the sale of steel by Glazer Steel Corporation to state mineral lessees constitutes sale of steel by Mr. Jerome Glazer under the Code of Ethics, an obvious conflict of interest exists for which the Commission on Ethics is authorized to impose sanctions.
Corporate identity is separate and distinct from the identity of its shareholders. La.Civ.Code art. 435. What is due to a *757 corporation is not due to any of the individuals who compose it, or vice versa, and a creditor of a corporation cannot compel any of its members to pay what may be due him by the corporation. La.Civ.Code art. 437. Liberto v. Villard, 386 So.2d 930 (La.App. 3rd Cir.1980); Smith-Hearron v. Frazier, Inc., 352 So.2d 263 (La.App.2d Cir.1977), cert. denied 353 So.2d 1337 (1978). The purpose of the insulation and limited liability of shareholders is to promote commerce and industrial growth by encouraging them to make capital contributions to corporations without subjecting all of their personal wealth to the risks of business. See Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964), 1 Hornstein, Corporation Law and Practice § 20 (1959), p. 20; Barber, Piercing the Corporate Veil, 1981-1982 Corp.Prac. Comm. 610, 611 (1982); Comment, Piercing the Corporate Veil in Louisiana, 22 Loy.Law Rev. 993, 994 (1976).
It is not unusual for a court in this country to disregard the corporate entity, or in synonymous terms "pierce the corporate veil," when corporate form has been used to "defeat public convenience, justify wrong, protect fraud, or defend crime." United States v. Milwaukee Refrigerator Transit Co., 142 F. 247, 255 (E.D.Wis.1905); See generally 1 Fletcher, Corporations §§ 41-48 (Perm.Ed.1974). A court might pierce the corporate veil when the established norm of corporateness has been so abused in conducting a business that the venture's status as a separate entity has not been preserved. Union Local 1476 of Amalgamated Meatcutters v. Union Citizens Club of Terrebonne, 408 So.2d 371 (La.App. 1st Cir.1981); Smith-Hearron v. Frazier, Inc., supra. There has also been a tendency to disregard the entity in situations in which adherence to the fiction would clearly result in inequity. Watson v. Big T Timber Co., 382 So.2d 258 (La.App. 3rd Cir.1980); Liberto v. Villard, supra; Smith v. Moore, 347 So.2d 316 (La.App. 4th Cir.1977). These two approaches are frequently referred to as the "two pronged" test of formalities and fairness, but courts have applied the rule in a tremendously diverse manner. See Barber, supra, at p. 616-620. Often the courts pierce the corporate veil by saying simply that the corporation is the "instrumentality" or "alter ego" of the individual shareholder, without adequately explaining the real basis upon which this metaphorical language rests. See Cataldo, Limited Liability With One-Man Companies and Subsidiary Corporations, 18 Law & Contemp.Prob. 473, 497-98 (1953). All of these doctrines have been applied in Louisiana in one form or another, but in many instances, it is difficult to distinguish among them. Comment, Theory of the corporate Entity and The One-Man Corporation In Louisiana 38 Tul. L.Rev. 738, 741 (1964). See Kingsman Enterprises, Inc. v. Bakerfield Elec. Co., Inc., 339 So.2d 1280 (La.App. 1st Cir.1976).
We agree with Professor Ballentine, however, that the problems involved are to be solved not by "disregarding" the corporate personality, but by a study of the just and reasonable limitations upon the exercise of the privilege of separate capacity under particular circumstances in view of its proper use and functions. Ballentine, Corporations, § 122 (Rev.Ed.1946), p. 292. The policies behind recognition of a separate corporate existence must be balanced against the policies justifying piercing. Mull v. Colt Co., 31 F.R.D. 154, 166 (S.D.N.Y.1962). Comment, Piercing The Corporate Veil in Louisiana, supra, at 1002-17. For example, if the corporation's separate identity is to be disregarded for the purpose of imposing individual liability upon its shareholders, the strong social interest in encouraging capital investment would require that the separate identity be respected absent conduct on the part of the shareholders constituting waiver of the privilege of insulation, such as their own disregard for the corporate form, or their use of the corporate form to perpetrate fraud. Henn, Law of Corporations § 146 (2nd Ed.1970) p. 253. On the other hand, if the separate corporate capacity is asserted to evade a statutory restriction or regulation, abridgement, rather than abrogation, of the corporate entity privilege may be called for to prevent frustration of an important public regulatory policy without thwarting the basic goals of *758 separate corporate capacity. See 1 Fletcher, Corporations § 45 (Perm.Ed.1974); 2 Hornstein, supra at § 754. Cf. So. Central Bell Telephone v. La. Public Service Comm., 352 So.2d 964 (La.1977); Gutierrez v. Gutierrez, 172 So.2d 753 (La.App. 4th Cir.1965); Brooks-Scanlon Co. v. Railroad Comm. of La., 144 La. 1086, 81 So. 727 (1919). Depending upon the various competing policies and interests involved, the same factual scenario may result in recognition of a separate corporate identity for some purposes, i.e. insulation of shareholders from liability, and a disallowance of the separate corporate entity privilege for others. Each situation must be considered by the court on its merits. The facts presented must demonstrate some misuse of the corporate privilege in that situation or the need of limiting it in order to do justice. Ballentine, supra at 293.
As Sanborn, J., said in a much quoted federal case,
If any general rule can be laid down in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.
United States v. Milwaukee Refrigerator Transit Co., 142 F. 247, 255 (E.D.Wisc.1905). See also Haynes v. Champagne Tile Corp., 228 F.Supp. 157 (E.D.La.1964) and cases cited therein.
Applying these precepts, we conclude that the separate corporate entity privilege is not without limits and does not permit a public official such as Mr. Glazer to use his wholly-owned and controlled corporation to do that which the Code of Ethics for Governmental Employees expressly commands he shall not do. Recognition of the corporate identity of Glazer Steel Corporation separate from Mr. Glazer for purposes of governmental ethics would be a misuse of the privilege of separate capacity and further none of its proper functions and objectives, viz., limited liability of shareholders; corporate capacity to hold property, enter contracts, sue and be sued, and to enjoy continued existence. Henn, supra, at p. 241. Additionally, recognition of a separate identity between Mr. Glazer and Glazer Steel Corporation would thwart the policy of the legislature embodied in the Code of Ethics, impair public confidence in the integrity of government, unfairly penalize persons who resigned from public service because of similar conflicts, and have a corruptive influence on officials who forgo personally profitable activities inconsonant with their public duties. Under the facts of the present case, there is no doubt that Mr. Glazer, as chief operating officer, chairman of a board composed entirely of himself, his son, a salaried corporate employee, and an attorney, and as one hundred percent owner of his corporation, caused services to be performed for persons doing business with his agency and received something of economic value from them through his corporation. Because of Mr. Glazer's complete dominance of his corporation he received economic benefits and incurred risks of wrongdoing as much as if he had personally transacted business with the state mineral lessees.
The Code of Ethics expressly forbids a public official to receive anything of economic value for or in consideration of services rendered to any person who does business with his government agency. It would be truly anomalous if we were to adopt respondent's suggestion that an entity so completely identified with him and controlled by him operates to remove him from the coverage of the ethics statute. We do not believe that this was the aim of the legislature in enacting either the separate corporate entity privilege of the civil code or the prohibition against public officials' conflicts of interests in the governmental ethics code.[3] Cf. Perkins, supra at 1130-34.
*759 We disagree with the court of appeal's conclusion that legislative authorization for those engaged in the industry to serve on the mineral board implicitly permits an industry figure to serve regardless of any conflicts of interest he may have. The legislature has specifically provided that the Mineral Board and its members shall be subject to the Code of Ethics for Governmental Employees. La.R.S. 30:121(D).
Respondent raised several additional arguments before the court of appeal. These arguments were rejected by our appellate brethren, and we find no error in their disposition.
The terms "services" and "things of economic value" used in La.R.S. 42:1111(C)(2)(d) are not unconstitutionally vague or overbroad. La.R.S. 42:1102 defines these terms as follows:
(22) Thing of economic value means money or any other thing having economic value, except food, drink, or refreshments consumed by a public servant, including reasonable transportation and entertainment incident thereto, while the personal guest of some person, and includes but is not limited to:
(a) Any loan, except a bonafide loan made by a duly licensed lending institution at the normal rate of interest, any property interest, interest in a contract, merchandise, service, and any employment or other arrangement involving a right to compensation.
(b) Any option to obtain a thing of economic value, irrespective of the conditions to the exercise of such option.
(c) Any promise or undertaking for the present or future delivery or procurement of a thing of economic value.
In the case of an option, promise, or undertaking, the time of receipt of the thing of economic value shall be deemed to be, respectively, the time the right to the option becomes fixed, regardless of the conditions to its exercise, and the time when the promise or undertaking is made, regardless of the conditions to its performance.
Things of economic value shall not include salary and related benefits of the public employee due to his public employment or salary and other emoluments of the office held by the elected official.
* * * * * *
(24) `Service' means the performance of work, duties or responsibilities, or the leasing, rental, or sale of movable or immovable property.
We do not find these definitions vague, particularly since the Code of Ethics is not penal in nature and is therefore subject to a less strict standard of specificity than a criminal law.[4] See Jordan v. Acacia Mutual Life Ins. Co., 409 F.2d 1141, 1144-45 (D.C. Cir.1969), cert. denied, 395 U.S. 959, 89 S.Ct. 2101, 23 L.Ed.2d 746; State v. Wershow, 343 So.2d 605, 610 n. 1 (Fla.1977); Anderson v. Board of Civil Service Commissioners, 227 Iowa 1164, 290 N.W. 493, 495 (Iowa 1940). See also Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose); State v. Page, 332 So.2d 427 (La. 1976) (deterrence of wrongful criminal conduct, through liability, while often an object *760 of criminal statutes, may be an object of a regulatory statute as well, and does not in itself give a statute a penal character).
The respondent has cited Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) and Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976) as requiring us to adopt a "strict construction" of the Code of Ethics for Governmental Employees. We do not find these cases persuasive or controlling. Broadly stated, all three of the cases stand for the proposition that if a person's liberty, property or reputation is at stake because of what the government is doing to him, notice and an opportunity to be heard is essential. None of the cases involves a code of ethics violation or strict construction of a statute, and because Mr. Glazer was afforded notice and full hearing, the cases are clearly inapposite. More instructive, but not cited by either party, is the United States Supreme Court's decision in United States v. Mississippi Valley Generating Co., supra. Even though the federal conflict of interest statute is a criminal law, and therefore clearly a penal statute, the high court nevertheless refused to give it a narrow construction. Although the statute did not specifically provide for the invalidation of contracts made in violation of the statutory prohibition, the court construed it to authorize the disaffirmation of a tainted contract because the policy expressed in the conflict of interest statute, which makes it an offense for an officer of a corporation or other business entity, or a person interested in the pecuniary profits or contracts of such entity, to act as an agent of the United States for the transaction of business with such entity, leaves no room for equitable consideration; "if that policy is to be narrowed or limited by exceptions," said the court, "it is the function of Congress, and not of the courts, to spell out such limitations and exceptions." 364 U.S. at 565, 81 S.Ct. at 317, 5 L.Ed.2d at 297.
We need not address the contention that the phrase "interests which may be substantially affected by" found in 42:1115(B) is unconstitutionally vague. The Commission found that Mr. Glazer violated 42:1111(C)(2)(d) by receiving compensation from companies that have or seek to have contractual relationships with the State Mineral Board, prohibition of which is found in 42:1115(A).
Likewise, we need not decide the question of whether 42:1112(C) denies to appointed board members equal protection of the law by preventing self-disqualification from participation in a transaction involving the appointed board member's agency. The power of recusal for public employees, appointed board members excepted, is contained in 42:1112 and relates only to those transactions prohibited by that section. The Commission has not reurged its finding that Mr. Glazer has violated 42:1112(B)(5), and we accordingly make no decision or comment about such a violation.
Respondent has argued that 42:1111(C)(2)(d) should not be interpreted to prohibit arms-length transactions for to do so would lead to "absurd consequences" and would not serve the purposes of the Code of Ethics as articulated by the legislature in 42:1101(B). On the contrary, a conflict of interest is just as easily created in the course of ordinary business as it is in special business "deals." The legislature has sought to prohibit certain conflicts of interests in the Code of Ethics. The court of appeal correctly observed that the statute establishes objective standards, and actions prohibited by the standard are sufficient to violate the statute. 417 So.2d at 460. See United States v. Mississippi Valley Generating Co., supra, 364 U.S. at 549, 81 S.Ct. at 309, 5 L.Ed.2d at 288.
Finally, Mr. Glazer raises several arguments not addressed by the court of appeal. He contends that the orders issued by the Commission were beyond the scope of its discretion because they were unnecessarily severe and excessive, and that the orders were beyond the scope of its authority in that they required his removal from the Mineral Board with no possibility of reappointment for at least four years, and that *761 they required notification of customers of Glazer Steel Corporation that any payment by them to Glazer Steel would be considered a violation of 42:1117. We find merit in some of these contentions.
In brief, Glazer argues that the orders of the Commission calling for his removal from the Mineral Board are excessive because the Commission failed in its opinion to articulate reasons why less severe remedies would be inappropriate and because the Commission failed to consider the following factors:
(a) There was no evidence of specific intent to violate the Code of Ethics;
(b) There was no evidence that Glazer Steel's sale of industrial products to state mineral lessees in any way affected the regulation of those companies by the Mineral Board;
(c) There was no evidence that Glazer or Glazer Steel sought to conceal the transactions at issue;
(d) The evidence was undisputed that all of the transactions between Glazer Steel and state mineral lessees were conducted at arm's length;
(e) Such conduct have not previously been determined to be illegal by the Commission or the courts;
(f) There was no evidence that Glazer had ever provided preferential treatment to any state mineral lessees, that he ever attempted to use his position as a member of the Mineral Board to secure a competitive advantage for Glazer Steel or that he abused or misused his authority as a Mineral Board member in connection with any state mineral leases; and
(g) There was no evidence that the Mineral Board had taken any regulatory action with respect to leases held by companies with which Glazer Steel has transacted business during Glazer's tenure.
We find some merit in this contention, but from the record made and the opinion of the Commission, we are unable to evaluate whether the order requiring removal is an abuse of the broad discretion which is exclusively the province of the Commission. The record is devoid, for example, of any explanation as to why suspension from the Mineral Board, with reinstatement conditioned upon elimination of the conflict of interest prohibited by 42:1111(C)(2)(d), would be ineffective or inappropriate in this case. Since our review of the Commission's discretionary actions consists solely of a search for arbitrary or capricious conduct, we do not hold, however, that the Commission's order was excessive. 5 Mezines, Stein, Gruff, Administrative Law § 43.02(6) (1982); 3 Sutherland, Statutes and Statutory Construction § 65.05 (Sands Ed.1974). Rather, it is appropriate that we remand this case to the Commission with instructions to support its order with facts and articulated reasons, or to amend the order. Mezines, Stein, Gruff, supra, at § 43.02(7). Cf. Giallanza v. Louisiana Public Service Commission, 412 So.2d 1369 (La.1982).
We also find merit in respondent's argument that the Code does not authorize the Commission to impose sanctions of both removal from office and prohibition of appointment and service during a future term. In order for the Commission to carry out its mission it must have the power to remove an official from his position for the remainder of his current term of office and to require the elimination of the conflict which was the basis of his removal before he may be appointed to a future term. The statute does not bestow upon the Commission, however, the virtually unlimited power to bar a person from all future public service, unless he refused to divest himself of the cause of his conflict of interest. Suspension is a lesser sanction which likewise affects only the incumbent's current term, and not his eligibility for appointment to a conflict-free future term. Accordingly, suspension from office is included within and cannot be cumulated with removal. See La.R.S. 42:1153(B).
The notification to state mineral lessees is authorized by La.R.S. 42:1134(12) which provides that "each ethics body shall *762 do and perform such other acts, duties and functions as are provided elsewhere in this Chapter as it shall deem appropriate in connection with the provisions of this Chapter within its jurisdiction." In sending out the notices, the Commission was merely enforcing the provisions of La.R.S. 42:1117. Since the Commission is empowered by 42:1154 to file suit for civil penalties against any person violating § 1117, it can hardly be contended that it was operating outside the scope of its authority by notifying prospective violators of its intention to enforce the section.[5]

DECREE
The decision of the court of appeal is reversed. The Louisiana Commission on Ethics for Public Employees' finding of a violation of La.R.S. 42:1111(C)(2)(d) is reinstated. The case is remanded to the Commission for reconsideration of its orders consistent with this opinion.
COURT OF APPEAL JUDGMENT REVERSED. COMMISSION DETERMINATION OF VIOLATION OF LA.R.S. 42:1111(C)(2)(d) REINSTATED. CASE REMANDED TO COMMISSION FOR FINDINGS AND CLARIFICATION RELATIVE TO SANCTIONS.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
CALOGERO, J., dissents for reasons assigned by BLANCHE, J.
MARCUS, Justice (dissenting).
I dissent for the reasons assigned by the court of appeal and Justice Blanche in his dissenting opinion. I consider the matter addresses itself to the legislature.
BLANCHE, Justice (dissenting).
I respectfully dissent. The decision in this case turns on the construction of La. R.S. 42:1111(C)(2)(d). Yet, the majority does not follow the statutory guidelines for the application and construction of laws. La.C.C. arts. 13-21. Article 13 of the Civil Code states that when a law is free from ambiguity, the letter of it should not be disregarded under the pretext of pursuing its spirit.
La.R.S. 42:1111(C)(2)(d) is expressly limited to "public servants." Under La.R.S. 42:1102(19), a public servant is defined as a public employee or elected official. Nevertheless, the majority opinion expands the definition of "public servant" to include a corporation which is controlled by the public servant under the pretext of pursuing the spirit of the Ethics Code. The legislature could have easily included a corporation substantially owned by a public servant in the definition of a public servant. It also had the option of incorporating into La.R.S. 42:1111(C)(2)(d) the phrase "no public servant, and no legal entity of which such public servant is an officer, director, trustee, partner, or employee, or in which such public servant has a substantial economic interest", as was done in subsection E(1) of La.R.S. 42:1111. However, the legislature chose to do neither. I do not believe that we should transform the clear wording of La.R.S. 42:1111(C)(2)(d) so as to find Glazer guilty of unethical conduct. We should defer to the wisdom of the legislature. In effect, this was the basis of the court of appeal's decision.
LEMMON, Justice, concurring in denial of rehearing.
While I am inclined on reconsideration to agree with Justice Blanche's dissenting reasons, as amplified by respondent's argument in rehearing application, I concur in the denial in this case, in which respondent has now resigned and his resignation has been accepted.
NOTES
[1] Act No. 443 of 1979 extensively amended the Code of Ethics. The Commission has limited its argument to an alleged violation of the revised code, which became effective April 1, 1980.
[2] La.R.S. 42:1111(C)(2)(d) provides as follows:

§ 1111 Payments from nonpublic sources
C. Payments for nonpublic service. (2) No public servant shall receive anything of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115 from receiving a gift.
La.R.S. 1115(A) provides as follows:
§ 1115 Gifts
A. No public servant shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent or employee of such person, if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency.
[3] Out of an abundance of caution, we specifically note that our decision is limited to the facts of this case. In considering whether assertion of the privilege of separate corporate capacity constitutes an improper use, each situation must be examined within its own context. Moreover, our determination that Mr. Glazer may not assert the separate corporate entity privilege to avoid the strictures of the Code of Ethics has no effect upon his use of the corporate capacity for all of its proper functions and objectives.
[4] In Re Buquet, 184 So.2d 288 (La.App. 1st Cir.), writ denied 186 So.2d 159 (1966) held that the Code of Ethics was to be strictly construed because it was quasi-penal in nature. However, La.Acts 1967, No. 128, § 1, removed the criminal sanctions, and the court of appeal has correctly speculated that the statute should be given a more liberal construction. See State Mineral Board v. La.Comm. on Governmental Ethics, 367 So.2d 1188, 1192 (La.App. 1st Cir.) writ refused, 368 So.2d 1097 (1978). An analogous amendment changed the Florida ethics code, and has likewise resulted in a lesser degree of scrutiny. See Tenney v. Commission on Ethics, 395 So.2d 1244 (Fla.App.1981).
[5] La.R.S. 42:1152 empowers the Commission with the ability to cancel or rescind mineral leases under the appropriate and enumerated circumstances. In order to avoid such a drastic measure, notification to potential violators is an action within the discretion of the Commission.