794 So.2d 845 (2000)
In re John T. "Tommy" McJUNKINS and Corporate Computing, Inc.
No. 99 CA 0326.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
*846 Paul Loy Hurd, Monroe, Counsel for John T. "Tommy" McJunkins and Corporate Computing, Inc.
R. Gray Sexton, Maris L. McCrory, Jennifer G. Magness, Baton Rouge, Counsel for Louisiana Board of Ethics.
Dannie P. Garrett, III, Baton Rouge, Amicus Curiae Louisiana Municipal Association.
Before: SHORTESS, C.J., PARRO, and KUHN, JJ.
KUHN, J.
Appellants, John T. "Tommy" McJunkins and Corporate Computing, Inc. ("Corporate Computing"), appeal a decision of the Louisiana Board of Ethics ("the Board"). Appellants challenge the Board's determination that McJunkins and Corporate Computing, Inc., a corporation whollyowned by McJunkins, violated Section 1111(C)(2)(d) of the Code of Governmental Ethics ("the Code"), La. R.S. 42:1101 et seq., by performing compensated services for Luffey, Huffman, and Monroe ("LHM"), an accounting firm that had a contractual relationship with the Ouachita Parish Police Jury ("the police jury") to perform accounting services for the police jury.[1] McJunkins served as a member of the police jury when the services in question were provided. The Board assessed a joint fine of $3600 against the appellants. We affirm.

I. FACTUAL BACKGROUND AND PROCEEDINGS BELOW
Appellants present the following pertinent statement of facts in their appellate brief:
Mr. McJunkins is the sole shareholder of [Corporate Computing], and thus Mr. McJunkins has a "controlling interest" in [Corporate Computing]. In 1995, Mr. McJunkins, through [Corporate Computing], agreed with [LHM] to resolve *847 the existing malfunctions on their existing computer network, and to design and install an enhanced network system utilizing the Microsoft WINDOWS operating system. The services provided by Mr. McJunkins and [Corporate Computing] began in 1995 and were concluded by September 1997. During 1995, 1996 and 1997, Mr. McJunkins and [Corporate Computing] performed specific "services" for [LHM] to complete the 1995 project, and received a "thing of economic value," i.e. approximately $35,000. Mr. McJunkins became an "elected official" on or about January 8, 1996 when he took office as a duly elected Police Juror and member of the Ouachita Parish Police Jury, which Police Jury became Mr. McJunkins "agency" under the Louisiana Ethics Code. In 1996 and 1997, [LHM] was a party to a contract with the Ouachita Parish Police Jury, and thus [LHM] was an entity covered by LSA-R.S. 42:1115A(1).
(Footnotes Omitted)
By separate letters dated April 16, 1998, McJunkins and Corporate Computing were informed by the Board that they may have violated Section 1111(C)(2)(d) by their conduct of "providing approximately $36,181 in services between October 1996 and October 1997 to ... [LHM], a firm which contracts to provide auditing services for the [police jury]." After holding a hearing on August 20, 1998, the Board determined that McJunkins and Corporate Computing violated Section 1111C(2)(d) of the Code by providing compensated computing services and equipment to LHM, who had a contractual relationship with the police jury, and ordered that a fine of $3,600 be imposed jointly on McJunkins and Corporate Computing.[2] McJunkins and Corporate Computing have appealed the Board's ruling.[3]

II. APPELLANTS' CONTENTIONS
The parties generally agree that Louisiana Revised Statute 42:1111(C)(2)(d) prohibited McJunkins and Corporate Computing from receiving "any thing of economic value" in consideration of services rendered to LHM while McJunkins served as a member of the police jury. Appellants do not dispute that they have received a "thing of economic value," but contend that the "thing of economic value" was received during 1995, prior to McJunkins' election as police juror.
More specifically, appellants contend their conduct did not violate Section 1111(C)(2)(d) because a "promise or undertaking" (as contemplated by La. R.S. 42:1102(22), which sets forth the definition of "thing of economic value")[4] existed between appellants and LHM prior to McJunkins' service as a police juror. Appellants contend that La. R.S. 42:1102(22) allows newly elected officials to complete their performance of promises and undertaking *848 entered into before becoming an elected official. Appellants submit that, based on the language of La. R.S. 42:1102(22), the receipt of a thing of value is statutorily deemed to occur at the time when the "promise or undertaking" is made and not when the payment is actually received. Applying this language to the facts of this case, appellants contend that the receipt of a thing of economic value occurred in August 1995 (when Corporate Computing agreed to provide its services to LHM), prior to the time that McJunkins was elected to serve as a police juror. Thus, appellants argue that their actions did not violate the Code. Appellants submit that the Board's interpretation of the Code violates his constitutional rights to contract, own and use property.

III. ANALYSIS

A. Standard of Review
Judicial review of the decision of the Board is available in accordance with the Administrative Procedure Act. La. R.S. 42:1143. The Administrative Procedure Act specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. La. R.S. 49:964(F). The reviewing court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. La. R.S. 49:964(G). On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Div., 97 0121, p. 5 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 803, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.

B. Policies and Objectives of the Code
In Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983), the supreme court held that the conduct of an individual in permitting his wholly-owned and controlled corporation to sell steel to state mineral lessees while the individual was a member of the State Mineral Board was prohibited by the Code. The court discussed the purpose for the enactment of the Code and addressed its objectives, as follows, in pertinent part:
Art. 10 § 21 of the 1974 Louisiana Constitution directed the legislature to enact a code of ethics for all officials and employees of the state and its political subdivisions and to create one or more boards to administer the code. Pursuant to this mandate, the legislature enacted the Code of Ethics for Governmental Employees. La. R.S. 42:1101 et seq. Among its multiple policy objectives are impartiality, fairness and equality of treatment toward those dealing with government; assurance that decisions of public importance will not be influenced by private considerations; maintenance of public confidence in government (wherein enters the matter of appearances); and prevention of use of public office for private gain. La. R.S. 42:1101(B).
... [T]he primary objective of the legislation is to prevent public officers and employees from becoming involved in conflicts of interests. A conflict of interest is a situation which would require an official to serve two masters, presenting a potential, rather than an *849 actuality, of wrongdoing. The wrongdoing does not have to occur in order for a prohibited conflict to exist. A public official may have done no wrong in the ordinary sense of the word, but a conflict of interest may put him in danger of doing wrong. The Code is aimed at avoiding even this danger. For this purpose, the Code ... identifies certain types of conflicts of interests and prohibits conduct by public officials which would bring these conflicts into being. Additionally, the code empowers the commission on ethics to determine when a conflict of interests exists and to impose certain sanctions.
The prohibited conflict of interest situation involved in this case is one in which the public servant receives private compensation from persons having business with his public agency for services rendered by the servant to that person outside the servant's regular government employment. The danger in the conflict, of course, is that the public servant's official dealings with the person may be unduly influenced contrary to the public interest by the public servant's receipt of private compensation from the same person. The danger exists even if the public servant actually performs bonafide services for his outside income. Accordingly, The Code ... specifically prohibits any public servant from receiving anything of economic value for or in consideration of services rendered to or for any person if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency. La. R.S. 42:1111(C)(2); 42:1115(A).
Glazer, 431 So.2d at 755-756 (Citations omitted).

C. Conduct of Appellants
A review of the record in this matter supports the Board's conclusion that appellants violated the provisions of La. R.S. 42:1111(C)(2)(d) as a result of Corporate Computing's receipt of a "thing of economic value" during McJunkins' service as police juror.[5] As the Board determined, Corporate Computing provided services to LHM on an invoice basis at an hourly rate during 1995, 1996, and 1997.
As the Board did, we likewise reject appellant's argument that the "thing of economic value" (payments received pursuant to the 1996 and 1997 invoices as a result of a promise or undertaking made in August 1995) was deemed received prior to McJunkins' service as police juror.
Prior to his election as police juror, McJunkins and/or Corporate Computing had generally agreed to provide services to LHM to resolve immediate computer problems and update the computer system. There was no written contract setting out the terms or scope of the work to be performed. However, McJunkins' testimony and a review of the invoices for work performed during 1996 and 1997 establishes that much of the work performed by Corporate Computing was on an "as needed" basis and went well beyond the scope of work which could have been contemplated by the initial agreement between McJunkins and LHM during 1995. McJunkins acknowledged that many of the 1996 and 1997 invoices did not bear his notation of "P," denoting project work; these were not for services included in the project undertaken by the August 1995 agreement. One example is that additional *850 work was generated when a lightning storm caused damage to LHM's computer equipment during 1996. Neither McJunkins nor Corporate Computing had a contractual obligation to provide many of the services in question. There is no plausible argument to condone work which was not even contemplated prior to McJunkins' election. The receipt of payment for these services alone would constitute a violation of the Code.
We find the Code has not operated to deprive appellants of any contractual rights which existed prior to McJunkins' election as police juror. Therefore, we also find no merit in appellants' arguments that the Board's interpretation of the Code's provisions violates their constitutional rights.

IV. CONCLUSION
For these reasons, we affirm the decision of the Board. Costs of this appeal are assessed in equal portions to each appellant.
AFFIRMED.

Appendix "A"

WRITTEN REASONS FOR JUDGMENT OPINION OF THE LOUISIANA BOARD OF ETHICS

(November 12, 1998)

In Re: John T. "Tommy" McJunkins and Corporate Computing, Inc.

(Ethics Board Docket No. 97-606)

LOUISIANA BOARD OF ETHICS
The Louisiana Board of Ethics (the "Board"), at its August 20, 1998 meeting, conducted a public hearing for the purpose of exploring the following:
Appendix "A"Continued
CHARGES
I.
That Corporate Computing, Inc., a corporation owned by Ouachita Parish Police Juror Tommy McJunkins, may have violated Section 1111C(2)(d) of the Code of Governmental Ethics (LSA-R.S. 42:1101 et seq.) by providing approximately $36,181 in services between October 1996 and October 1997 to Luffey, Huffman & Monroe, CPA., a firm which contracts to provide auditing services for the Ouachita Parish Police Jury.
II.
That Ouachita Parish Police Juror Tommy McJunkins may have violated Section 1111C(2)(d) of the Code of Governmental Ethics (LSA-R.S. 42:1101 et seq.) by providing approximately $36,181 in services between October 1996 and October 1997 through his company, Corporate Computing, Inc., to Luffey, Huffman & Monroe, CPA., a firm which contracts to provide auditing services for the Ouachita Parish Police Jury.
On the basis of the evidence and testimony adduced, the Board now makes the following essential:

I.

FINDINGS OF FACT

1.
John T. "Tommy" McJunkins has served as a member of the Ouachita Parish Police Jury since January 8, 1996 and continues to serve in that capacity to date.

2.
Mr. McJunkins owns 100% of the stock in the corporation named Corporate Computing, Inc.

*851 3.
The Ouachita Parish Police Jury entered into the following audit contracts with the firm of Luffey, Huffman, and Monroe, CPA:

Agency Year
Ouachita Parish Police Jury 1996
Ouachita Parish Police Jury 1997
Ouachita Parish Civil Defense Agency 1996
Southeast Sewerage District No. 3 1996
Ouachita Community Enhancement Zone 1997

4.
In August, 1995, Mr. McJunkins and Luffey, Huffman, and Monroe, CPA agreed that Corporate Computer, Inc. would provide services to Luffey, Huffman, and Monroe, CPA to solve its immediate computer problem and to update the computers for the accounting firm to a Windows environment. The services were performed and billed on an invoice basis at an hourly rate. There was no written contract for services.

5.
Corporate Computing, Inc. charged an hourly rate of $85 if Luffey, Huffman, and Monroe, CPA purchased equipment from Corporate Computing, Inc. and an hourly rate of $125 if they did not purchase the equipment from Corporate Computing, Inc. Sometime prior to January 1997 the rate increased from $85 an hour to $95 an hour.

6.
On June 21, 1996, Mr. McJunkins requested an advisory opinion from the Board as to whether a police juror is required to disclose business contacts with various commercial entities that sell goods to the police jury. On August 20, 1996, the Board responded that insufficient facts were provided to render an advisory opinion, but advised Mr. McJunkins that Section 1111C(2)(d) of the Code prohibits a public servant, or legal entity in which he owns in excess of twenty-five percent, from rendering compensated services to a person that has a contractual, business or financial relationship with the public servant's agency.

7.
On September 9, 1996, in response to the Board's determination on August 20, 1996, Ouachita Parish Attorney Lynn Tubb requested an advisory opinion as to whether an elected police juror can continue to conduct business under a contract with Luffey, Huffman & Monroe, if Luffey, Huffman & Monroe, entered into to a contract with the Ouachita Parish Police Jury. The Board, at its September 25, 1996 meeting, responded to the request and stated that Section 1111C(2)(d) would prohibit the police juror from continuing to provide compensated services to Luffey, Huffman & Monroe and advised the police juror to cancel his existing contract with Luffey, Huffman & Monroe, if Luffey, Huffman & Monroe, had an existing contract or was seeking a future contract with the police jury.

8.
Mr. McJunkins requested a reconsideration of the Board's September 25, 1996 advisory opinion and appeared before the Board at its October 30, 1996 meeting, at which the Board reaffirmed the advisory opinion rendered on September 25, 1996.

9.
At its December 10, 1996 meeting, the Board considered comments from Lynn Tubb as to the Board's prior decisions. The Board reaffirmed the advisory opinion rendered on September 25, 1996.

10.
Mr. McJunkins ignored the Board's advisory opinions based on his belief that he had a binding contract with Luffey, Huffman & Monroe, CPA and his belief that he was obligated to fulfill that contract.

*852 11.
Corporate Computing, Inc. completed the project for Luffey, Huffman, and Monroe, CPA in September, 1997.

12.
Between January 1, 1996 and October, 1997, Corporate Computing, Inc. invoiced Luffey, Huffman, and Monroe, CPA for a total of $34,008.79 for computer services and equipment rendered during that time period.

II.

APPLICABLE LAW
Section 1111C(2)(d) of the Code prohibits a public servant from performing compensated services for any person who has a contractual, business or financial relationship with his agency. This Section provides in pertinent part:
§ 1111. Payment from nonpublic sources
* * *
C. Payments for nonpublic service.
* * *
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
* * *
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.
* * *
Section 1115A(1) of the Code prohibits a public servant from accepting any thing of economic value from any person who has a contractual, business or financial relationship with the public servant's agency. This Section provides in pertinent part:
§ 1115. Gifts
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency, or ...
The following terms are defined in Section 1102 of the Code and are relevant when analyzing the above Sections:
(2)(a) "Agency" means a department, office, division, agency, commission, board, committee, or other organizational unit of a governmental entity. For purposes of this Chapter, "agency of the public servant" and "his agency" when used in reference to the agency of a public servant shall mean:
* * *
(vi) For public servants of political subdivisions, it shall mean the agency in which the public servant serves, except that for members of any governing authority and for the elected or appointed chief executive of a governmental entity, it shall mean the governmental entity. Public servants of political subdivisions shall include, but shall not be limited to, elected officials and public employees of municipalities, parishes, and other political subdivisions; sheriffs and their employees; *853 district attorneys and their employees; coroners and their employees; and clerks of court and their employees.
* * *
(22)(a) "Thing of economic value" means money or any other thing having economic value, except promotional items having no substantial resale value; food, drink, or refreshments consumed by a public servant, including reasonable transportation and entertainment incidental thereto, while the personal guest of some person, and, with reference to legislators only, reasonable transportation when organized primarily for educational or informational purposes, including food and drink incidental thereto, and includes, but is not limited to:
* * *
(24) "Service" means the performance of work, duties, or responsibilities, or the leasing, rental, or sale of movable or immovable property.

III.

OPINION
It is the opinion of the Board that John T. "Tommy" McJunkins and the corporation in which he owns a controlling interest, Corporate Computing, Inc., violated Section 1111C(2)(d) of the Code by performing compensated services for the accounting firm of Luffey, Huffman, and Monroe, CPA while it had a contractual relationship with the Ouachita Parish Police Jury to perform accounting services for various agencies under the supervision and jurisdiction of the Ouachita Parish Police Jury. Corporate Computing, Inc. did not have a binding contract with Luffey, Huffman, and Monroe, CPA prior to or subsequent to Mr. McJunkins becoming a member of the Ouachita Parish Police Jury. Mr. McJunkins, through his corporation, Corporate Computing, Inc. performed the services on an as needed basis and was paid an hourly rate for the rendering of such services. Section 1111C(2)(d) prohibits a public servant, or legal entity in which the public servant owns an interest in excess of twenty-five percent, from performing compensated services for a person that has a contractual relationship with the public servant's agency. Therefore, Section 1111C(2)(d) prohibited Mr. McJunkins from performing compensated services for Luffey, Huffman, and Monroe, CPA.
The Board rejects Mr. McJunkins' argument that the thing of economic value was received at the time the promise or undertaking was made, which was prior to Mr. McJunkins becoming a member of the Ouachita Parish Police Jury. LSA-R.S. 42:1102(22)(b) provides that the time of receipt a thing of economic value is the time when the promise or undertaking was made. Mr. McJunkins did not receive a thing of economic value prior to his becoming a member of the Ouachita Parish Police Jury. Corporate Computing, Inc. performed services and provided computer equipment to Luffey, Huffman, and Monroe, CPA as needed, not pursuant to a contract, promise or undertaking as considered by the Code.
The Louisiana Board of Ethics is authorized to impose a penalty of up to $10,000 for each of the above violations of the Code. In this particular situation, given the findings of fact outlined above, the Board imposes a joint penalty of $3,600 upon John T. "Tommy" McJunkins and Corporate Computing, Inc. for violating Section 1111C(2)(d) of the Code.

IV.

DECREE AND ORDER
IT IS DECREED that John T. "Tommy" McJunkins and Corporate Computing, *854 Inc. violated Section 1111C(2)(d) of the Code by providing compensated computing services and equipment to Luffey, Huffman & Monroe, CPA who had a contractual relationship with the Ouachita Parish Police Jury.
IT IS ORDERED that a fine of $3,600, made payable to the Treasurer of the State of Louisiana, be imposed jointly upon John T. "Tommy" McJunkins and Corporate Computing, Inc. for violating Section 1111C(2)(d) of the Code.
BY THE ORDER OF THE BOARD, this 12th day of November, 1998.
/s/ Robert L. Roland
 Robert L. Roland, Chairman
/s/ Harry Blumenthal, Jr.
 Harry Blumenthal, Jr., Vice Chairman
Absent /s/ Robert P. Bareikis
Absent /s/ Dr. Robert P. Bareikis
/s/ Virgil Orr
 Dr. Virgil Orr[*]
/s/ E.L. Guidry, Jr.
 Judge E.L. Guidry, Jr.[*]
/s/ T.O. Perry, Jr.
 T.O. Perry, Jr.
/s/ Revius O. Ortique, Jr.
 Justice Revius O. Ortique, Jr.
/s/ Ronald L. Sawyer
 Ronald L. Sawyer
/s/ Nathan J. Thornton, Jr.
 Nathan L. Thornton, Jr.
/s/ Edwin O. Ware
 Edwin O. Ware
Absent _______________
 Rev. Carole Cotton Winn
NOTES
[1] Louisiana Revised Statute 42:1111C, pertaining to payments for nonpublic service, provides in pertinent part:

(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
. . .
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) ... from receiving a gift.
Louisiana Revised Statute 42:1115, pertaining to gifts, provides in pertinent part:
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency ...
[2] See the Louisiana Board of Ethic's Opinion No. 97-606, attached hereto as Appendix A.
[3] Louisiana Revised Statute 42:1142 provides that a public servant who is aggrieved by the action of an ethics body may appeal to the First Circuit Court of Appeal.
[4] Louisiana Revised Statute 42:1102(22) provides, in part:

(a) "Thing of economic value" means money or any other thing having economic value, ... and includes but is not limited to:
. . .
(iii) Any promise or undertaking for the present or future delivery or procurement of a thing of economic value.
(b) In the case of [a] promise, or undertaking, the time of receipt of the thing of economic value shall be deemed to be ... the time when the promise or undertaking is made, regardless of the conditions to its performance.
[5] We note that the activities of Corporate Computing, McJunkins' wholly-owned and controlled corporation, are attributable to him personally for purposes of the Code. See Glazer, 431 So.2d at 758.
[*] The board member dissented as to the amount of the penalty imposed, being of the opinion that the amount of the penalty is excessive.