495 So.2d 1278 (1986)
In re Sheldon D. BEYCHOK and Wolf Baking Company, Inc.
No. 86-C-0523.
Supreme Court of Louisiana.
October 20, 1986.
*1279 R. Gray Sexton, Peter Wright, La. Ethic Admin., Baton Rouge, for applicant.
Charles McCowan, Jr., Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Baton Rouge, Leslie Schiff, Sandoz, Sandoz & Schiff, Opelousas, for respondent.
DIXON, Chief Justice.
Sheldon D. Beychok has served on the Board of Supervisors of Louisiana State University since his appointment in 1978. Beychok also serves as president, chief executive officer and is a majority stockholder in Wolf Baking Company, Inc., a Louisiana corporation engaged in the production and sale of bread and bakery products. As *1280 an employee of Wolf Baking Company Beychok receives compensation from the corporation for services rendered. The Board of Supervisors on which Beychok serves has general authority to oversee the operation of the Louisiana State University System even though routine purchases of supplies and services are handled by designated purchasing agents on the respective individual campuses.
Between January 1, 1981 and December 31, 1984 Wolf Baking Company entered into a series of contracts with LSU for the sale of food products to the university. These contracts were awarded after receipt of sealed competitive bids, and they authorized purchases of $219,088.00 by the university during the contract periods. Some of the contracts were renewed in January 1985 and as a result the university purchased additional products costing an estimated total of $27,758.00.
By correspondence dated August 23, 1984 Beychok and other members of the Board of Supervisors sought from the Commission on Ethics for Public Employees an advisory opinion as to the propriety of members of the board entering into contracts for the sale of goods and services to LSU.
The commission considered this request and concluded that R.S. 42:1111C(2)(d),[1] 1112B(2) and (3)[2] and 1113B[3] prohibit members of the board from entering into business transactions with LSU.
After a public hearing the commission determined that Beychok had violated R.S. 42:1111C(2)(d) and 1112B(2) and (3) by virtue of his having received compensation (his salary) from Wolf Baking Company during the time that these transactions took place and having participated, by operation of law, in the food service contracts. The commission also concluded that Wolf Baking Company had violated R.S. 42:1113B by entering into contracts with LSU. The action taken by the commission was limited to ordering the discontinuation of the existing contracts between Beychok's company and the university and mandating that the university refrain from entering into future contracts with members of its governing authority.
Beychok and Wolf Baking Company then appealed to the court of appeal which reversed the commission's decision[4] and held that R.S. 42:1123(4) establishes an exception to R.S. 42:111C(2)(d), 1112B(2) and (3) and 1113B by allowing an entity controlled by a public servant to contract with the public servant's agency when the contract has been awarded by sealed competitive bid. The holding of the court of appeal did not decide whether a violation of the codal provisions discussed above had in fact occurred. In re Sheldon D. Beychok and Wolf Baking Co., Inc., 484 So.2d 912 (La. *1281 App. 1 Cir.1986). The commission applied for writs assigning as error the application of R.S. 42:1123(4) as an exception to R.S. 42:1113.
The Code of Governmental Ethics was adopted by the legislature in accordance with Art. 10, § 21 of the Louisiana Constitution.[5] R.S. 42:1101B states that the primary purpose of the code is to assure that decisions are made in an impartial manner free from the influence of private gain. In order to accomplish this goal, the Declaration of Policy found in R.S. 42:1101B emphasizes the need to enact ethical standards protecting against conflicts of interest which may give rise to the appearance of impropriety. A conflict of interest arises when an official is torn between serving two masters: his private interest and the public's. Since a conflict of interest increases the danger of wrongdoing, the code's primary objective is to prevent their occurrence. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983).
The primary objective of the code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that tend to create a perception of conflict of interest. It does this by delineating situations that present too great a danger of a conflict of interest occurring.
Beychok and Wolf Baking Company were charged with violating R.S. 42:1111C(2)(d), 1112B(2) and (3) and 1113B:
(1) R.S. 42:1111C(2)(d) prohibits a public servant from receiving "anything of economic value" for services rendered to any person who (1) "[h]as or is seeking to obtain contractual or other business or financial relationships with the public servant's agency" or (2) who "[h]as interests which may be substantially affected by the performance ... of the public employee's official duty." R.S. 42:1115A(1) and B(2). Because Beychok draws a salary for his services to Wolf Baking Company, he is in violation of this section if Wolf Baking Company does business with the Board of Supervisors.
(2) R.S. 42:1112B(2) and (3) prohibit a public servant from "participating" in transactions in which "any person" of which the public servant is an officer, director, trustee, partner, or employee "has a substantial economic interest." Since Beychok has an ownership interest in Wolf Baking Company he is within the prohibitions of these subsections if he has "participated" in the transactions involving the bread contracts. R.S. 42:1102(15), which defines "participation," provides that participation occurs not only when a public servant acts affirmatively in his official capacity, but also when the public servant has or shares responsibility for some actions.
(3) Except for legislators, R.S. 42:1113B prohibits bidding on, or any interest in, any contract under the jurisdiction or supervision of the board member's agency by the board member, or by the member's family or by a legal entity in which the board member has an economic interest. Under Art. 8, § 7 of the Louisiana Constitution, the Board of Supervisors has general jurisdiction of and is charged with the overall supervision of LSU. It is undisputed that Beychok is the majority stockholder and has an economic interest in Wolf Baking Company and that Wolf Baking Company entered into contracts with LSU to provide food products. Since the acquisition of goods and services by LSU is a transaction which is under the board's general supervision and jurisdiction, Wolf Baking Company violated this section by entering into the contracts to provide its products.
Beychok and Wolf Baking Company have engaged in conduct prohibited by the sections of the code described in 1, 2 and 3 *1282 above. However, the statute contains exceptions to the prohibited business activities described in 1, 2 and 3 above. R.S. 42:1123[6] lists them, describing several categories of activity which the statute "shall not preclude," as paraphrased below:
"This Part shall not preclude:"
(1) uncompensated civic or charitable activities.
(2) awards for public service.
(3) "Sharing ... compensation received from the governmental entity by a person of which such public servant ... controls less than ten percent" if the public servant did not participate in the procurement, "except as otherwise specifically prohibited by R.S. 42:1113."
(4) sharing proceeds from the "lowest sealed competitive bid ... except as otherwise specifically prohibited by R.S. 42:1113."
(5) campaign contributions.
(6) certain activity by employees of higher educational institutions required by professional accreditation organizations.
(7) employment of certain physicians by the office of mental health.
(8) maritime employment of board members of the Port of New Orleans commission.
42:1113B prohibits board members from bidding on or having any interest in contracts with his board. Therefore, § 1123(3) provides that the code "shall not preclude," except for board members, sharing in compensation from the governmental entity if the board member controls less than ten percent interest in the contractor. Board members cannot share in contracts with their agencies even if the board member controls less than ten percent of the contractor. R.S. 42:1112B(2) and (3), R.S. 42:1113.
And 1123(4) provides that the code "shall not preclude," except for board members, sharing proceeds from sealed bid contracts. Board members cannot share in contracts with their boards, even if the contract was obtained because it was the "lowest sealed competitive bid." R.S. 42:1113, R.S. 42:1123(4). The commission's interpretation of the statutes was correct.
The court of appeal concluded that the board's interpretation of § 1113B would result in an unconstitutional denial *1283 of the equal protection of the law to Beychok, in violation of Art. 1, § 3 of the La. Const.
This court provided the basic framework for the analysis of an equal protection claim in Bazley v. Tortorich, 397 So.2d 475, 483 (La.1981):
"... We must decide, first, whether the legislation operates to the disadvantage of some suspect class or impinges on a fundamental right explicitly or implicitly protected by the constitution, thereby requiring strict judicial scrutiny. If not, the legislative scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination. Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387-88 (La.1978); Everett v. Goldman, 359 So.2d 1256 (La. 1978); Succession of Robins, 349 So.2d 276 (La.1977)."
The court of appeal correctly found that there are no suspect classifications or fundamental rights involved in this case. They also found that the commission's interpretation of these statutes was not reasonably related to the furtherance of a legitimate state interest because "[t]here is no actual or even remote conflict of interest, impropriety or appearance of a conflict of interest or impropriety." In re Beychok, supra at 924. This, however, is not the proper application of the rational basis test. "[I]f a mere rational basis analysis is applicable, the United States Supreme Court has declared that the constitutional safeguard of equal protection is invoked `only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.'" Sibley v. Board of Supervisors of Louisiana State University, 462 So.2d 149, 156 (La.1985), citing McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).
The purpose and policy of this code is the implementation of enumerated ethical objectives designed to protect the integrity of state government and to facilitate recruitment and retention of qualified personnel by prescribing essential restrictions against conflicts of interest in state government without creating unnecessary barriers to public service. Womack v. Louisiana Commission on Governmental Ethics, 250 La. 833, 199 So.2d 891 (1967). To achieve this purpose and to protect against both actual and perceived conflicts of interest between the private interests and public duties of public servants, the state established objective rather than subjective standards. These standards do not require that there be actual corruption on the part of the public servant or actual loss by the state. The legislature has reasonably decided that board members should not do business with the agency governed by the board.
For the foregoing reasons, the decision of the court of appeal is reversed, and the opinion of the commission is reinstated, at the cost of respondent.
COLE, J., dissents and assigns reasons.
WATSON, J., dissents for the reasons assigned by COLE, J.
LEMMON, concurs.
COLE, Justice (Dissenting).
When the legislature enacted the Code of Governmental Ethics it apparently felt not all contracts between a public servant and his agency present such a danger of wrongdoing as to justify an absolute prohibition against their existence. Instead, the legislature enacted a code prohibiting only certain types of conduct.
For evidence of the legislature's intent to exclude certain conduct from the code, we need only look to R.S. 42:1123, entitled "Exceptions." The majority's opinion attempts to rewrite 42:1123 and in doing so, it would eviscerate the exceptions, elevating 42:1113, and overriding the exceptions the legislature took pains to set forth.
*1284 R.S. 42:1123 sets out eight exceptions. We are concerned with exception (4):
This Part shall not preclude:
(4) Sharing in any compensation received from the governmental entity by a person of which such public servant owns or controls any portion thereof, provided such compensation was received by such person as a result of having made the lowest sealed competitive bid on a contract or subcontract and having had such bid accepted by the governmental entity or the general contractor, and provided such public servant did not participate or assist in the procurement of the acceptance of such low bid, except as otherwise specifically prohibited by R.S. 42:1113.
The majority attempts to read 42:1123 as incorporating the language of the prohibitions contained in 42:1113. While the majority opinion confines itself to the language of 1113B, the reasoning would clearly require the last clause of 42:1123 to incorporate the remaining contractual prohibitions of 1113A and C. If 1123 is judicially amended in this manner there is no need to have 42:1123 in the Code, because the prohibitions of 42:1113 would always override the exception enumerated in 42:1123.
Clearly, this attempt to rewrite 1123 does harm to the legislative scheme of the Code of Governmental Ethics. This decision would effectively scrap the "exceptions" section of the Code. We should give effect to the legislative intent and read the statutes so as to make sense of both. The two sections of the Code can be harmonized quite easily. The Code provides (in 1113), that no public servant shall bid on or enter into any contract, subcontract or other transaction that is under the supervision or jurisdiction of the agency of that public servant unless (see 1123) the compensation "was received by such person as a result of having made the lowest sealed competitive bid...."
R.S. 42:1123 was not written especially to outlaw bidding for board members. It was written for all public servants. The majority's interpretation of 1123(4)'s exception clause would render all of 1123 moot.
Rules of statutory construction provide that where various statutes deal with the same subject matter they should be harmonized if possible. It is presumed the legislature intended each provision enacted to have a useful purpose and to have meaning. Clark v. Board of Commissioners, Port of New Orleans, 422 So.2d 522 (La. App. 1st Cir.1983).
It must be assumed when the legislature enacted the exception for competitive sealed bids it intended for that exception to apply when the situation described in 42:1123(4) arises. If 42:1123(4) is read as the majority suggests (incorporating all of 1113), there would be no need for 42:1123(4) because 1113 would always apply its ban on bidding. The legislature must have intended to discourage a public servant from participating in bids involving his agency unless his business obtained the lowest sealed competitive bid as explained in 1123(4).
For the reasons stated above, I respectfully dissent.
NOTES
[1] "C.(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:

(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift." R.S. 42:1111C(2)(d).
[2] "B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:

(2) Any person in which he has a substantial economic interest of which he may reasonably be expected to know.
(3) Any person of which he is an officer, director, trustee, partner, or employee." R.S. 42:1112B(2) and (3).
[3] "Other than a legislator, no appointed member of any board or commission, member of his immediate family, or legal entity in which he has an economic interest shall bid on or enter into or be in any way interested in any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such appointed member." R.S. 42:1113B.
[4] The court of appeal affirmed the holding of the commission that Sheldon Beychok violated the code by negotiating a contract for advertising space on the end zone countdown clocks in the LSU football stadium. Since Beychok and Wolf Baking Company have not applied for writs challenging this holding, it is not before this court. See Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971).
[5] "The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal." La. Const., Art. 10, § 21.
[6] "This Part shall not preclude:

(1) Participation in the affairs of charitable, religious, nonprofit educational, public service, or civic organizations, bona fide organized public volunteer fire departments when no compensation is received, or the activities of political parties not proscribed by law.
Provided, however, that the Code of Governmental Ethics shall apply to the purchase of fire trucks by bona fide organized public fire departments.
(2) Awards for meritorious public contributions given by public service organizations.
(3) Sharing in any compensation received from the governmental entity by a person of which such public servant owns or controls less than ten percent, provided such public servant did not participate or assist in the procurement of such compensation, except as otherwise specifically prohibited by R.S. 42:1113.
(4) Sharing in any compensation received from the governmental entity by a person of which such public servant owns or controls any portion thereof, provided such compensation was received by such person as a result of having made the lowest sealed competitive bid on a contract or subcontract and having had such bid accepted by the governmental entity or the general contractor, and provided such public servant did not participate or assist in the procurement of the acceptance of such low bid, except as otherwise specifically prohibited by R.S. 42:1113.
(5) Campaign contributions for use in meeting campaign expenses by any public servant who is or becomes a candidate for election to the same or another public office.
(6) Any activity of any public employee of a public higher education institution in this state who is covered by the tenure policy of the Board of Regents or the tenure policies and the administration of the tenure policies by the three higher education management boards and which activity is required by either regional or professional accreditation standards of organizations recognized by the Council on Postsecondary accreditation.
(7) The employment with the office of mental health of the Department of Health and Human Resources of a licensed physician who is a member of the psychiatric faculty of and compensated by Tulane University.
(8) Any individual employed in the maritime industry from serving as an appointed member of the Board of Commissioners of the Port of New Orleans." R.S. 42:1123.