526 So.2d 1354 (1988)
Thomas W. TEBBE
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 87 CA 0419.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1357 Dan M. Scheuermann, Baton Rouge, for appellant.
R. Gray Sexton, Peter G. Wright, Maris E. LeBlanc, Commission on Ethics for Public Employees, Baton Rouge, for appellee.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This case is an appeal by Thomas W. Tebbe from a decision of the Commission on Ethics for Public Employees (Commission); the Commission found that Mr. Tebbe violated LSA-R.S. 42:1112 A and 42:1116, imposed a fine of $5000, and ordered the Louisiana Board of Elementary and Secondary Education (BESE Board) to demote Mr. Tebbe from his position as Director of the West Jefferson Parish Vocational Technical School.[1]

FACTS
Prior to January, 1985, Mr. Tebbe was the Assistant Director of the West Jefferson Parish Vocational-Technical School (the School). In January, 1985, Mr. Tebbe was appointed acting Director of the School by the BESE Board. In July, 1985, the BESE Board made Mr. Tebbe permanent Director of the School, subject to the condition that he obtain his master's degree by the fall of 1985. (In order to be certified as a director of a Louisiana vocational technical school, a person must hold a master's degree.) In the summer of 1985, Mr. Tebbe requested permission from James Soileau, Executive Secretary to the BESE Board, to attend classes during the summer in connection with his pursuit of his master's degree. Mr. Soileau gave permission to Mr. Tebbe provided that he did this while on "actual annual leave" and provided that the School was properly run during his absence.
Charlotte Steger, another employee at the School, was a special needs instructor through July, 1985. At that time, Ms. Steger was promoted to the position of Assistant Director. At all pertinent times, Mr. Tebbe was in a supervisory position over Ms. Steger. From September, 1984, through September, 1985, pursuant to a request from Mr. Tebbe, Ms. Steger typed and edited various assignments Mr. Tebbe was required to complete in connection with his pursuit of his master's degree. Ms. Steger's work included editing and typing three or four papers as well as the rough draft of a sixty-nine page applied thesis. Ms. Steger spent approximately *1358 three hundred hours helping Mr. Tebbe; half of this work was performed during school hours using school equipment and supplies.
After typing the rough draft of Mr. Tebbe's thesis, Ms. Steger told Mr. Tebbe to find someone else to prepare the final draft of the thesis because she did not have the time nor was she experienced with the memory typewriter on which it was to be prepared. Donna Valois, who was employed at the School as Mr. Tebbe's secretary, typed the final draft, during school hours and using school equipment and supplies. Mr. Tebbe paid Ms. Valois for her typing; Mr. Tebbe and Ms. Valois had an understanding that Ms. Valois would make up any time the typing took her away from her normal duties. Ms. Valois spent approximately fifteen to eighteen hours over a period of four days working on this project.
ISSUES PRESENTED FOR REVIEW
Mr. Tebbe raises the following issues on appeal:
1. Whether the Commission possesses the authority, as opposed to the BESE Board, to investigate, charge and discipline an employee of the BESE Board;
2. Whether the methods of initiating prosecution by the Board of Ethics for elected officials when compared to those of the Commission deny Mr. Tebbe and other non-elected employees equal protection;
3. Whether the sequestration order imposed at the Commission's hearing was violated;
4. Whether LSA-R.S. 42:1112 A and 42:1116 are unconstitutionally vague;
5. Whether the Commission, through the conduct of the hearing, violated Mr. Tebbe's right to due process;
6. Whether the evidence adduced at the hearing supports the Commission's findings that LSA-R.S. 42:1112 A and 42:1116 were violated.

AUTHORITY OF COMMISSION TO DISCIPLINE MR. TEBBE
Mr. Tebbe contends that the BESE Board's authority over the vocational-technical school system is the same as that of a school board over a parish or city school system; thus, he argues that LSA-R.S. 42:11165 A would allow only the BESE Board, and not the Commission, to demote Mr. Tebbe.[2]
We disagree with Mr. Tebbe's contention that LSA-R.S. 42:1165 A should apply by analogy. LSA-R.S. 42:1165 A was simply intended to preserve the school board's right to administer and discipline under the state tenure statutes. This can be seen through an examination of LSA-R.S. 42:1165 B, which reads as follows: "B. Subject to the provisions of Subsection A, the commission may order that any public employee of a parish or city school board of this state be disciplined or dismissed as provided in this Chapter whenever the commission has determined that the public employee has violated this Chapter." Clearly the authority of the Commission over even the employees of the parish and city school boards for violations of the Ethics Code is preserved. Although we find LSA-R.S. 42:1165 A inapplicable to BESE Board employees, even if we were to apply the statute it would still give Mr. Tebbe no relief since he is being disciplined by the Commission for an Ethics Code violation, which the Commission has the right to do under LSA-R.S. 42:1165 B.
Mr. Tebbe further cites LSA-R.S. 42:1161 D as authority for his contention *1359 that only the BESE Board can discipline Mr. Tebbe; however, a reading of LSA-R. S. 42:1161 C shows the incorrectness of Mr. Tebbe's contention.[3] Clearly, LSA-R.S. 42:1161 D simply gives the Commission the right to discipline agency heads who fail to comply with the Commission's orders; LSA-R.S. 42:1161 D by excepting an elected official from discipline does not in turn except the employees of the elected official's agency from discipline.
A review of the statutes in the Code of Ethics shows no exclusion of those public employees supervised by the BESE board from the jurisdiction of the Ethics Commission. The definitions of "public employee" and "public servant" in LSA-R.S. 42:1102(18) and (19) contain no exception regarding the BESE Board or its employees.[4] LSA-R.S. 42:1112 A and 42:1116 apply to all public servants; LSA-R.S. 42:1131 C authorizes the Commission to apply the Code to public employees, with no exception for the BESE Board and its employees, and LSA-R.S. 42:1153 B authorizes the Commission to penalize "any public employee" for a violation of the Code of Ethics by removing, suspending, demoting, reducing the pay of, or imposing a fine on, the employee.[5] Once again, there is no exception for the BESE Board or its employees.
Mr. Tebbe also cites IT Corporation v. Commission on Ethics for Public Employees, 464 So.2d 284 (La.1985) to support his contention that the Commission had no authority to discipline Mr. Tebbe. Yet, in IT Corporation, the supreme court affirmed this court's ruling that the Commission could not order the IT Corporation to return the money it had received under a contract with the Department of Natural Resources because of Ethics Code violations. The basis for this ruling was that the Ethics Code gave the Commission no such authority. In the case sub judice, the penalties the Ethics Commission imposed *1360 are those set forth in LSA-R.S. 42:1153 B. We find no error.

DIFFERING TREATMENT OF ELECTED OFFICIALS
Mr. Tebbe contends that because the procedure for conducting investigations differs in that the Board of Ethics for Elected Officials may investigate allegations only in response to receipt of a sworn complaint whereas the Commission may initiate its own investigations as well as act on third party complaints, he has been denied equal protection.[6]
We first note that a statute's constitutionality is presumed; thus the burden of proving unconstitutionality rests with Mr. Tebbe. Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381 (La.1978). Mr. Tebbe attached an editorial to his brief entitled "Weakness in the State Ethics Law." This editorial was never introduced into evidence at Mr. Tebbe's hearing and is not part of the record on appeal; thus we will not consider it. LSA-R.S. 42:1141 D; 42:1142; 42:1143; LSA-R.S. 49:955 E, G.
In order to show that a statute is unconstitutional, where, as here, no suspect classification or fundamental right is involved, Mr. Tebbe must show that the classification made by the statute is arbitrary and does not bear a rational relationship to a legitimate state interest. Burmaster, 366 So.2d at 1386-7. In Broussard v. Commission on Ethics for Public Employees, 461 So.2d 1227, 1236 (La.App. 1st Cir.1984), this court held that "the distinction drawn between elected officials and other public servants with respect to the initiation of ethics body investigations is reasonable and with good reason." According to the court,
There are important reasons for distinguishing between elected officials and other public servants with respect to the manner in which complaints are initiated. Because of elected officials' visibility, there exists an opportunity for large numbers of persons outside of their offices to have knowledge of information relative to possible violations of the Code. On the other hand, the actions of public employees and appointed officials are more likely to be subject of the knowledge of only a small circle of interested or affected persons who are likely to fear the consequences of filing a complaint. Because of elected officials' special vulnerability to attacks against character and personal ethics, it is not unreasonable to require that a person making such charges against such a person be willing to do so in a sworn complaint.
This assignment of error is without merit.

VIOLATION OF SEQUESTRATION ORDER
Attached to Mr. Tebbe's brief is the affidavit of Sheila Adams, wherein Ms. Adams stated that:

*1361 Mrs. Steger gestured with her finger for Mr. McDonald [a possible witness] to go with her down the hall. He got up, they walked off, and returned about five minutes later. Later that morning, immediately upon returning from giving her testimony, Mrs. Steger tilted her head, smiled, and winked at Mr. McDonald.
We first note that the affidavit does not reflect a violation of the sequestration order, which only forbid the witnesses to talk about the Commission's case against Mr. Tebbe. The sequestration did not require them to be completely silent or to remain in one specific place.
Because the affidavit does not establish a violation of the sequestration order, we do not find it necessary to rule on whether an application for rehearing before the Ethics Commission is the proper vehicle for Mr. Tebbe to seek relief. LSA-R.S. 49:959 B. We find no error.

VAGUENESS OF LSA-R.S. 42:1112 A and 42:1116
Mr. Tebbe contends that LSA-R.S. 42:1112 A and 42:1116 are unconstitutionally vague, yet he never sets forth in his brief the basis for these allegations. Mr. Tebbe cites the standard by which a statute is judged to be vague or overbroad: "a statute has been considered unconstitutionally vague if men of common intelligence must guess as to its meaning." State v. McKeel, 452 So.2d 1171, 1172 (La.1984). Because the Code of Ethics is not penal in nature, it is subject to a less strict standard of specificity than is a criminal law. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 759 (La.1983). In Glazer, the Louisiana Supreme Court specifically held that the term "things of economic value" was not unconstitutionally vague. Glazer, 431 So.2d at 759.
Furthermore, in State Mineral Board v. Louisiana Commission on Governmental Ethics, 367 So.2d 1188, 1192 (La.App. 1st Cir.), writ denied, 368 So.2d 1097 (La.1978), this court held that former LSA-R.S. 42:1117 D, F, which provided that no member of an appointed board or commission shall "participate" in any transaction involving the board or commission in which he has a "substantial personal economic interest," was not unconstitutionally vague or overly broad.
We find that LSA-R.S. 42:1112 A and 42:1116 are not unconstitutionally vague. Key words and phrases in both statutes are defined in LSA-R.S. 42:1102, i.e., "public servant", LSA-R.S. 42:1102(19); "participate", LSA-R.S. 42:1102(15); "substantial economic interest", LSA-R.S. 42:1102(21); "governmental entity", LSA-R.S. 42:1102(12); and "thing of economic value", LSA-R.S. 42:1102(22). Applying the standard Mr. Tebbe set forth in his brief, both statutes clearly identify what conduct constitutes a violation. We find no error.

DUE PROCESS RIGHTS OF MR. TEBBE
Due process requires that a person be informed of the charges against him; be given the opportunity to present evidence; be represented by counsel; be allowed to cross-examine witnesses against him; and be given the right to appeal. U.S.C.A. Const.amends. V, XIV; La.Const. of 1974, art. 1, § 2. The Administrative Procedure Act, LSA-R.S. 49:950, et seq., applies to the Ethics Commission. To be accorded relief for a violation of due process rights, the person must show that he was prejudiced by the violation. LSA-R.S. 49:964 G.[7] Mr. Tebbe contends that the *1362 Commission enlarged the charges against him and thus violated his due process rights. He stipulated at the hearing before the Commission that he had asked and allowed Ms. Steger and Ms. Valois to type his work in connection with his pursuit of a master's degree using school equipment and supplies; he also contended that his "asking" and "allowing" Ms. Steger and Ms. Valois did not violate LSA-R.S. 42:1112 A and 42:1116. During the hearing when Ms. Steger was asked about the magnitude of work she did for Mr. Tebbe, counsel for Mr. Tebbe objected on the basis that the Commission was going beyond the scope of the charges. When Ms. Steger was asked about whether she wanted to do the work for Mr. Tebbe and whether Mr. Tebbe removed her from classes to do the work, Mr. Tebbe's counsel renewed his objection. Finally, when the Commission attempted to introduce a paper of Mr. Tebbe's which Ms. Steger testified she did not type but simply proofread, counsel for Mr. Tebbe objected on the basis that the charges only encompassed typing and not proofreading.
We find that only the last objection has merit on the basis that the Commission enlarged the charges against him. Although Mr. Tebbe did stipulate that he had asked and allowed Ms. Steger and Ms. Valois to do his typing work, the Commission in order to determine whether a violation of LSA-R.S. 42:1116 had occurred was entitled to inquire of the circumstances surrounding Mr. Tebbe's request. To determine whether the transaction involved the governmental entity as set forth under LSA-R.S. 42:1112 A, inquiry as to the amount of work done, particularly that work done while the women were at the School, and the manner in which the work was done was relevant. The issue before the Commission was whether Mr. Tebbe violated LSA-R.S. 42:1112 A and 42:1116 by having "asked and allowed" Ms. Steger and Ms. Valois to perform his typing work. Furthermore, the evidence was relevant to determine the severity of Mr. Tebbe's violation, if any occurred. The evidence showing that Ms. Steger proofread one of Mr. Tebbe's papers should not have been admitted since the charge dealt only with typing; however, we do not find that the introduction of this evidence substantially prejudiced Mr. Tebbe.
Mr. Tebbe further contends he was denied due process because the same attorneys who present the case before the Commission also advise the Commission. He also complains that the same Commission, which investigates whether to charge a person with an Ethics Code violation, also conducts the hearing to determine whether the person violated the Ethics Code, robbing the charged person of presumption of innocence. This argument has been raised in a prior case dealing with the Commission and rejected. In re Beychok, 484 So.2d 912 (La.App. 1st Cir.), reversed on other grounds, 495 So.2d 1278 (La.1986). Following the jurisprudence, we also reject Mr. Tebbe's contention.
Mr. Tebbe argues that his rights were further violated because the Commission's attorneys "double-teamed" on cross-examination and argument, and because the objections of the Commission's attorney were sustained while those of Mr. Tebbe's counsel were overruled.
The procedural rules governing the Commission are contained in LSA-R.S. 42:1141 D, which reads in pertinent part as follows:
(2) For purposes of an investigation or a hearing, each ethics body may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any records which the ethics body deems relevant or material to the investigation or hearing. Such attendance of witnesses and the production of any such records may be required at any place designated by the ethics body at no cost to the public servant or other person charged as permitted by the rules of the ethics body.

*1363 Each ethics body shall adopt rules providing for discovery consistent with Chapter 3 of Title III of Book II of the Code of Civil Procedure, to the extent and in the manner appropriate to its proceedings.

. . . . .
(6) Any public servant or other person who is the subject of any hearing may have legal counsel, cross examine witnesses, call witnesses, and present evidence in his own behalf.
LSA-R.S. 42:1143 also controls:
§ 1143. Procedure and rules of evidence
Except as otherwise provided in this Chapter, all proceedings conducted by an ethics body shall be subject to and in accordance with the Administrative Procedure Act.
The relevant statutes in the Administrative Procedure Act are as follows:
§ 955. Adjudication; notice; hearing; records
C. Opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
§ 956. Rules of evidence; official notice; oaths and affirmations; subpoenas; depositions and discovery; and confidential privileged information
In adjudication proceedings:
(1) Agencies may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs. They shall give effect to the rules of privilege recognized by law. Agencies may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. Objections to evidentiary offers may be made and shall be noted in the record. Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form.
We initially note that we find the conduct and attitude of the Commission at the hearing very disturbing. It is ironic that the body which is charged with monitoring ethics amongst public and elected employees conducted a hearing which verged on denying the charged employee his due process rights. The tenor of the hearing can best be shown through some excerpts from the transcript. When counsel for Mr. Tebbe objected to testimony dealing with the magnitude of the work Ms. Steger performed, the following transpired:
COMMISSION MEMBER: We are not a court of law
COUNSEL FOR MR. TEBBE: But Mr.
COMMISSION MEMBER: We are not bound [by] legalistic rules of evidence.
On another occasion when Mr. Tebbe's attorney objected to testimony on the basis that the Commission was enlarging the charges, he was told the following:
COMMISSION MEMBER: We have already made a stipulation about the charge, so let's proceed and get on with this because we're giving you due process. We are spending a great deal of time, but we are not going petty fog this thing. Go ahead.
At one point, one of the Commission members permanently left the hearing; subsequently, when counsel for Mr. Tebbe called one of his witnesses, another Commission member left the hearing, temporarily.[8] The following occurred:
COUNSEL FOR MR. TEBBE: With all due respect again.
COMMISSION MEMBER: With all due respect you, we have quorum. Proceed.
COUNSEL FOR MR. TEBBE: I would just ask that we wait for Mr. Borie's off the telephone.
COMMISSION MEMBER: I don't.
COUNSEL FOR MR. TEBBE: I would note my objections for the record
*1364 COMMISSION MEMBER: We have a quorum.
COUNSEL FOR MR. TEBBE: Mr. Bussie and Mr. Borie have left the room and are not here to hear this testimony which I think is crucial to our defense.
COMMISSION MEMBER: Could we start, perhaps, by asking this lady to give us her full name.
While not a violation of Mr. Tebbe's due process rights or a violation of any procedural statutes, the direct examination of Ms. Steger, the Commission's main witness, was conducted first by Mr. Wright, attorney for the Commission, and then by Mr. Sexton, another attorney for the Commission. A reading of the testimony shows that when the extremely leading questions of Mr. Wright failed to elicit the desired response from Ms. Steger, Mr. Sexton began questioning her. As the two attorneys continued to question Ms. Steger, and to make those questions even more leading, the testimony elicited was more favorable to their case. As will be discussed later, when the actual testimony of Ms. Steger is separated from testimony supplied via leading questions, there is not enough evidence to substantiate the charges under LSA-R.S. 42:1116.
Mr. Wright's questioning was as follows:
Q. And you considered this as part of your duties as Assistant Director?
A. I considered it was helping him continue his position as Director. He had to get the Master's to keep his position.
Q. Was this a duty you perceived that you had because of your specific position as a Special Needs Instructor or an Assistant Director, or is it a duty you perceived because you were a subordinate to Mr. Tebbe?
A. It is a duty I perceived I got because I had a Master's Degree in English and knew how to write with no effort, and I think he would have requested the same help from another instructor if they had the same background that I had and the ability to write.

. . . . .
Q. If you perceived this as part of your duties, even as Assistant Director, why did you finally tell Mr. Tebbe or why did you discontinue doing the work for him?
A. I never did discontinue doing the work. I only refused to type the final thesis because I'm not capable of producing a perfect typed page on Memorex Typewriter.
Q. You refused to do it?
A. I asked him to pay somebody to do it.
Q. Why would you ask him to pay somebody to do something that you perceived to being a part of your official duties?
A. I knew nobody else would do it without pay. Nobody else would do it without pay. I asked him to pay somebody that would have the capabilities of using a Memorex Typewriter which I did not have.
Q. If you think it was part of your duties to have to do this, why did you ask him to ask his wife to do it?
A. Trying to get out of some work. I had too many duties.
Q. Why didn't you suggest that the duties be transferred to the official duties of some other employee at the school. [sic]
A. I was tired of doing all that work. I didn't feel like I was able to do my regular
Q. Why didn't you suggestif you viewed this as being an official duty, why did you suggest that the work be done by his wife or by him paying somebody instead of assigning it to one of the other typists or employees of the school to do as part of their duties; why did
A. His wife is one of the typists at school. She is one of the typists. She is an accountant, and she does a lot of the typing.
When Mr. Wright finished his examination, Mr. Sexton questioned Ms. Steger.
Q. What are the reasons that view [sic] this as being part of your official duties other than the fact that Mr.

*1365 Tebbe told you to do it, and that he was your supervisor?
A. I didn't think it was part of my official duties. I thought it was a request by my supervisor which I which I did.
Q. Was this in your job description?
A. No, it's not, but there were a lot of things that weren't in my job description including writing brochures and writing the staff handbook, but I did it because it required writing.
Q. Did you view this as being part of the work that you were required to perform for the Vo Tech School or part of the work that you were being asked to perform for Mr. Tebbe?
A. It was favor requested.
Q. But you were doing it for him on a personal basis; you did not view this as part of your job in the sense that it was a duty of the Vo Tech School by whom you were employed?
MR. WASSERMAN [COUNSEL FOR MR. TEBBE]: Objection, I think she said
MR. SEXTON: I don't have any more questions.
MR. WASSERMAN: Mr. Sexton, I think it was your testimony, not the witnesses [sic].
MR. SEXTON: I think the testimony is pretty clear, Mr. Wasserman, that she viewed this as an official duty only because her official supervisor told her to do it. If that's not correct, perhaps you can rehabilitate her on cross examination.
In the midst of the questioning was this statement by a Commissioner member: "We have the right to find out ... whether or not what she did could well have violated the Code of Ethics itself on her part." Yet later in the hearing, after Ms. Steger's testimony had become more favorable to the Commission and when counsel for Mr. Tebbe cross-examined Ms. Steger, two members of the Commission reminded Ms. Steger of LSA-R.S. 42:1169, "Freedom from reprisal for disclosure of improper acts".
Mr. Tebbe complains that he was not accorded due process because his objections were not sustained whereas those of the Commission were. Although this did occur, and although the Commission did limit to an extent Mr. Tebbe's opportunity to present evidence that there was no school policy forbidding his conduct, we do not find that the Commission's actions substantially prejudiced Mr. Tebbe.
While the Commission did limit Mr. Tebbe's opportunity to present evidence that his actions in using school personnel and equipment to perform his typing were accepted in the School and that many other employees did the same thing in furtherance of their education, Mr. Tebbe was still able to present some evidence on this issue. During his direct examination, Mr. Tebbe testified as to school policy on this matter. Mr. Soileau also testified on direct examination by Mr. Tebbe's attorney that there was no written rule which prohibits use of state equipment for work which is job related; that all personnel working toward certification were given support and privileges within a fair realm. When Mr. Tebbe's attorney questioned Ms. Steger about whether she had work done by school students at her home, the Commission's attorney objected on the basis that the matter was irrelevant because Mr. Tebbe had used school personnel, rather than students; we find this objection meritorious. Ms. Steger earlier had explained that in order to have students perform "personal" or "private" work for a teacher, official approval must be obtained by the teacher.
Mr. Tebbe's attorney was also able to cross-examine Ms. Steger about her testimony that Mr. Tebbe had discussed what his testimony before the Commission would be with her; he introduced a letter from Ms. Steger to Mr. Tebbe which read in part:
'I talked to Peter Wright Friday. He assured me that our testimonies did not conflict. He said that the only problem was in the interpretation of the facts. He also said that he did not feel that you would lose your job if found guilty. I *1366 told him that I felt uncomfortable because you obviously were afraid of me.'
Mr. Tebbe was also able to testify as to his conversations with Ms. Steger concerning the Commission hearing. After a thorough review of the hearing, we can not say that in the instances of possible due process violations, substantial rights of Mr. Tebbe were prejudiced. For these reasons, we find this assignment of error to be without merit.

VIOLATION OF LSA-R.S. 42:1112 A and 42:1116
We find that the Commission's ruling that Mr. Tebbe violated LSA-R.S. 42:1116 to be manifestly erroneous. The evidence shows that Mr. Tebbe requested of Ms. Steger that she type his papers, and she acquiesced; that he offered to pay her, and that she declined; that although her job at the School did not include typing, she often helped others with typing and editing papers because she was an excellent typist and an English major; that she continued to perform her school duties while typing for Mr. Tebbe; that the reason Ms. Steger quit typing for Mr. Tebbe was because she was unable to use a Memorex typewriter on which the thesis needed to be typed and because the typing was interfering with her free time; that she never filed a grievance against Mr. Tebbe; that she was not compelled or coerced into doing this work; and that she only complained to other workers about doing this work for Mr. Tebbe when it interfered with her free time. We note that Ms. Steger never testified that because she was afraid of Mr. Tebbe, she performed his typing work; rather, Mr. Sexton made the statements that Ms. Steger was afraid of Mr. Tebbe statements which were not supported by her testimony. While Ms. Steger did perform a large amount of work for Mr. Tebbe while on school time (150 hours), the work was done over a one year period of time. Reviewing the testimony at the hearing, we find that the Commission was manifestly erroneous in holding that Mr. Tebbe used the authority of his office to compel or coerce Ms. Steger to perform his typing. We reverse the Commission's finding that Mr. Tebbe violated LSA-R.S. 42:1116.
We do find that the Commission was correct in holding that Mr. Tebbe violated LSA-R.S. 42:1112 A. Mr. Tebbe participated in a transaction in which he had a personal substantial economic interest involving the governmental entity. Although both Ms. Steger and Ms. Valois continued to perform their duties at the School, the fact remains that during school hours they were performing work for Mr. Tebbe's benefit; although the School would also benefit by Mr. Tebbe's acquisition of a master's degree, the personal benefits and personal economic interest he had were greater than that of the School. We find it disturbing that Mr. Tebbe went so far as to call Ms. Steger away from her classes on a few occasions in order that she could help him. For these reasons, we find that the Commission was correct in ruling that LSA-R.S. 42:1112 A was violated. However, because Mr. Tebbe's conduct was not expressly prohibited due to the nature of the vocational-technical school setting, we find a penalty of $1500.00 to be appropriate.[9]
For these reasons, we affirm the decision of the Commission finding that Mr. Tebbe violated LSA-R.S. 42:1112 A. We reverse the decision of the Commission finding that Mr. Tebbe violated LSA-R.S. 42:1116. We amend the penalty imposed on Mr. Tebbe to fine him $1500.00 for his violation of LSA-R.S. 42:1112 A. Costs to be assessed equally against Mr. Tebbe and the Commission.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] LSA-R.S. 42:1112 A and 42:1116 read as follows:

§ 1112. Participation in certain transactions involving the governmental entity
A. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity.
§ 1116. Abuse of office
No public servant shall use the authority of his office or position, directly or indirectly, in a manner intended to compel or coerce any person or other public servant to provide himself, any other public servant, or other person with any thing of economic value. This Section shall not be construed to limit that authority authorized by law, statute, ordinance, or legislative rule in carrying out official duties.
[2] LSA-R.S. 42:1165 A reads as follows:

§ 1165. Authority of school boards to administer tenure laws not affected
A. Nothing in this Chapter is intended nor shall it be construed to have the effect of repealing, amending, or modifying in any way any state tenure statutes pertaining to the rights of probationary or permanent teachers or other public employees of any parish or city school board of this state nor the authority of any such school board to administer the state tenure statutes, relative to teachers and other public employees of the school board, when such teachers and other public employees are serving in their official capacities. All job actions based upon the causes for disciplining or dismissal of teachers or other school public employees, as may be now or hereafter set forth in the state tenure statutes, shall remain under the exclusive jurisdiction of the appropriate parish or city school board.
[3] LSA-R.S. 42:1161 C and D read as follows:

§ 1161. Preventive measures by agency heads
C. Compliance with order of commission. Every agency head shall forthwith comply with any lawful order received from the commission and shall immediately take disciplinary action against any employee under his supervision when ordered to do so by the commission.
D. Failure of agency head to comply with commission order. Failure on the part of any agency head who is not an elected official to comply promptly with any lawful order received from the commission shall subject him to all penalties provided for elsewhere in this Chapter and shall cause the immediate suspension of all salary and other benefits which he otherwise would be entitled to receive. Such suspension shall remain in effect during the period in which he fails or refuses to comply, and all public employees are hereby directed to refuse to honor any drafts or other documents which would violate this provision.
[4] LSA-R.S. 42:1102(18) and (19) read as follows:

§ 1102. Definitions
(18) `Public employee' means anyone, whether compensated or not, who is:
(a) An administrative officer or official of a governmental entity who is not filling an elective office.
(b) Appointed by any elected official when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the governmental entity or an agency thereof, either as a member of an agency, or as an employee thereof.
(c) Engaged in the performance of a governmental function.
(d) Under the supervision or authority of an elected official or another employee of the governmental entity.
A public employee shall be in such status on days on which he performs no services as well as days on which he performs services. The termination of any particular term of employment of a public employee shall take effect on the day the termination is clearly evidenced.
(19) `Public servant' means a public employee or an elected official.
[5] LSA-R.S. 42:1131 C and 42:1153 B read as follows:

§ 1131. Commission on Ethics for Public Employees
C. Jurisdiction. The commission shall administer and enforce the provisions of this Chapter and the regulations, rules, and orders issued hereunder with respect to public employees.
§ 1153. Penalties
B. Upon finding that any public employee or other person has violated any provision of this Chapter, the commission by a majority vote of the membership, may remove, suspend, or order a reduction in pay, or demotion of the public employee or other person, or impose a fine of not more than five thousand dollars, or both.
[6] LSA-R.S. 42:1141 A and B which deal with the procedure for investigating public employees and elected officials read as follows:

§ 1141. Procedure
A. Complaints. (1) Each ethics body shall consider any signed sworn written complaint from any Louisiana elector concerning a violation of this Chapter which is within its jurisdiction and filed by the Louisiana elector. Such person must be willing to appear before the ethics body in public hearings to testify in support of his complaint. A copy of the complaint shall be mailed by certified mail to the party against whom it is filed within five days after it is filed.
(2) The commission may, by resolution adopted by a majority of its membership, consider any matter which it has reason to believe may be a violation of this Chapter within its jurisdiction or the regulations or orders issued by the commission. Once adopted, the resolution shall be signed by the chairman and a copy thereof shall be mailed by certified mail to the party against whom it is directed within five days after the resolution is adopted. The staff of the commission shall appear at private or public hearings to produce evidence in support of the resolution.
B. Investigation and hearing. Upon receiving a complaint or, in case of the commission, adopting a resolution as provided in Subsection A, the ethics body shall first conduct a private investigation to elicit evidence upon which the ethics body could determine whether to conduct a public hearing. After the investigation has been completed, the ethics body shall determine whether to conduct public hearings to receive evidence and to determine whether any violation of this Chapter within its jurisdiction has occurred, and if a violation has occurred, to prescribe authorized penalties. All determinations in this Subsection shall be by a majority vote of the membership of the ethics body.
[7] LSA-R.S. 49:964 G reads:

G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon lawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
[8] A quorum consists of three members of the five member board. LSA-R.S. 42:1133 A.
[9] We note that the penalty provision of the ethics code provides that censure is a penalty for an elected person, yet it is not listed among the penalties for non-elected persons. LSA-R.S. 42:1153 B. Were it listed among the penalties which could be imposed, we would also censure Mr. Tebbe for his violation of LSA-R.S. 42:1112 A.