540 So.2d 270 (1989)
Thomas TEBBE
v.
LOUISIANA COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 88-C-1585.
Supreme Court of Louisiana.
March 13, 1989.
*271 Dan M. Scheuermann, Metairie for applicant.
R. Gray Sexton, Baton Rouge, Peter G. Wright, Maris E. LeBlanc, Port Allen, for respondent.
LEMMON, Justice.
The issue in this case is whether plaintiff violated specified provisions of the Code of Governmental Ethics while he was serving as the director of a state vocational-technical school.[1]
The Louisiana Commission on Ethics for Public Employees, after receiving and investigating complaints pertaining to plaintiff's conduct, issued a formal letter of charges accusing plaintiff of violating La. R.S. 42:1112 A and 1116 of the Code of Governmental Ethics, which provide:
"No public servant, except as provided in R.S. 42:1120, shall participate in a transaction in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity."[2]
La.R.S. 42:1112 A.
"No public servant shall use the authority of his office or position, directly or indirectly, in a matter intended to compel or coerce any person or other public servant to provide himself, any other public servant, or other person with any thing of economic value. This Section shall not be construed to limit that authority authorized by law, statute, ordinance, or legislative rule in carrying out official duties."
La.R.S. 42:1116.
The Commission conducted a public hearing on the charges, at which evidence was presented. After the hearing the Commission made the following findings of fact:
"At all pertinent times hereto through January, 1985, Thomas W. Tebbe was employed as Assistant Director of the West Jefferson Parish Vocational-Technical School (the `School').
"In January, 1985, Mr. Tebbe was appointed Acting Director of the School by the Louisiana Board of Elementary and Secondary Education (the `BESE Board'), which has general supervision over all vocational-technical schools in the State.
"In July, 1985, Mr. Tebbe was appointed permanent Director of the School by the BESE Board, subject to the condition that he complete and obtain his Master's Degree by the Fall of 1985.
"The holding of a Master's Degree is a requirement for a person's certification as the director of a Louisiana vocational-technical school.
"In September, 1984, Ms. Charlotte Steger was a `Special Needs Instructor' at the School.
"After Mr. Tebbe's promotion to Director of the School, Ms. Steger was promoted to the position of Assistant Director at the School.
"Commencing in September, 1984, Ms. Steger substantially assisted Mr. Tebbe by typing and editing assignments required for the Master's Degree he was pursuing at Holy Cross College in New Orleans. This work included typing three or four papers in addition to typing a rough or preliminary draft of a sixty-nine page master's thesis. She spent a total of approximately 300 hours, from *272 September, 1984 through September, 1985, providing this assistance to Mr. Tebbe, over half of which was performed by her at Mr. Tebbe's direction during school hours. She also used school equipment and supplies.
"Mr. Tebbe offered to pay Ms. Steger for performing this work, but she declined to accept any compensation for performing the services.
"On several occasions prior to her promotion to Assistant Director, Ms. Steger was removed by Mr. Tebbe from classes that she was teaching in order that she could perform this work. When this happened, her classes were left unsupervised with assignments or directions.
"During the period of time that she was providing this assistance to Mr. Tebbe, Ms. Steger suggested to him that he find some other person who could perform this work for him, and specifically suggested to him that his wife, who also was employed at the School, do this work. Mr. Tebbe dismissed her suggestion that his wife perform the typing for the reason that she was not familiar with the required style.
"Although she was a proficient typist and regularly did typing incidental to her own responsibilities, Ms. Steger's regular duties did not include performing typing at the School; other school employees were employed for the specific purpose of performing typing duties on a regular basis.
"Because she had a Master's Degree in English and was acknowledged at the School as possessing superior writing ability, Ms. Steger, from time to time, reviewed or proofread items such as tests and brochures for other members of the School's staff during the course of her job; she never provided assistance, such as the above-described work she provided to Mr. Tebbe, to any other employee at the School.
"Providing the assistance to Mr. Tebbe in connection with his Master's Degree was not within the scope of her duties as an employee of the School.
"Mr. Tebbe benefited from Ms. Steger performing this work at the School during working hours because it allowed him to supervise and monitor the work in progress, as well as to be immediately available to answer questions or provide other assistance, during his regular working hours at the School.
"After having typed the rough draft of his master's thesis, Ms. Steger told Mr. Tebbe to find someone else to prepare its final draft because she did not have the time to do the work and was not experienced with using the memory typewriter on which it was to be prepared.
"The final draft of Mr. Tebbe's master's thesis was typed at the School on school time, using school equipment and supplies, by Ms. Donna Valois, who was employed at the School as Mr. Tebbe's secretary. She agreed to perform this work on a compensated basis and was, in fact, paid for doing this typing by Mr. Tebbe. He had an understanding with her that she would make up any time the project took away from her normal duties. She spent approximately 15 to 18 hours over a period of four days working on the project.
"Ms. Steger complained to her co-workers about the work she was performing for Mr. Tebbe because it placed demands on her personal time during off hours and on Saturdays.
"Because of the assistance she was providing to Mr. Tebbe during working hours, Ms. Steger completed some of her normal School duties at home.
"Ms. Steger originally assisted Mr. Tebbe in response to his solicitation for assistance and was initially unaware of the magnitude of assistance she would eventually be requested to provide. Ms. Steger did not refuse to assist Mr. Tebbe because she feared her refusal to do the work would jeopardize her working relationship with Mr. Tebbe and because she viewed her job duties as including the performance of work assignments made to her by the Assistant Director, her supervisor. However, she was of the opinion that providing this assistance was not a part of her official duties, and viewed the work as a favor.

*273 "In connection with the work on his master's degree during the summer of 1985, Mr. Tebbe requested and obtained permission from Mr. James Soileau, Executive Secretary to the BESE Board, to attend classes during the summer of 1985 provided that he did this while on `actual annual leave' and provided that the School was properly run during his absence.
"Mr. Tebbe's offer to pay Ms. Steger for performing this work, his payment of Ms. Valois for doing the work she performed, his understanding with Ms. Valois that she would make up her work that she missed doing his paper on her own time, and his instruction from Dr. Soileau relative to his taking annual leave to attend classes in connection with his pursuit of his master's degree, evidenced that Mr. Tebbe knew, at all pertinent times hereto, that the pursuit of his master's degree was a personal endeavor and a responsibility to be performed on his own time and at his own expense, as opposed to being an official responsibility which could have been pursued using School time and resources."
The Commission concluded that the foregoing conduct by plaintiff violated La.R.S. 42:1116, emphasizing that one of the purposes of the Code is to insure that public office is not used for private gain. The Commission found that plaintiff used the authority of his office to compel Ms. Steger to perform the work for him during school hours, noting the volume of the services was so great that plaintiff could not have reasonably believed Ms. Steger would perform the work gratuitously if he did not hold a supervisory position over her.
The Commission further concluded that plaintiff violated La.R.S. 42:1112 A by participating in a transaction involving the schoolthe use of school employees and resources which he had the responsibility to supervise and directwhen he knew he had a personal substantial economic interest in allowing the employees to do this work.
The penalty imposed by the Commission was a $5,000 fine and a demotion to the position of Assistant Director.
Plaintiff sought a review of the Commission's decision.[3] The court of appeal rendered judgment affirming the finding of a violation of Section 1112 A, but reversing the finding of a violation of Section 1116. 526 So.2d 1354. The court accordingly amended the penalty to a fine of $1,500, but allowed the demotion order to stand.
We granted plaintiff's application for certiorari to determine the correctness of the Commission's decision that plaintiff violated Section 1112 A.[4] 531 So.2d 462.
One primary purpose of the Code of Governmental Ethics is to assure that decisions are made by public servants in an impartial manner, free from the influence of private gain.[5] La.R.S. 42:1101 B; In re Beychok, 495 So.2d 1278 (La.1986). Section 1101 B also emphasizes the need for ethical standards protecting against conflicts of interest which may give rise to the appearance of impropriety. A conflict of interest arises when a public servant is torn between serving two masters: his private interest and the interest of the public. *274 Since a conflict of interest increases the danger of wrongdoing, the Code is designed to prevent the occurrence of such conflicts. Beychok, supra, citing Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983).
The focus of the present case in this court is on La.R.S. 42:1112 A, which prohibits a public servant from participating in a "transaction involving the governmental entity" he is serving or has served, when he should reasonably be aware that he has a personal substantial economic interest in the transaction. The critical issue involves the interpretation of the phrase "transaction involving the governmental entity".
The words and terms used in the Code are defined in La.R.S. 42:1102. Section 1102(23) states:
"`Transaction involving the governmental entity' means any proceeding, application, submission, request for a ruling or other determination, contract, claim, case or other such particular matter which the public servant or former public servant of the governmental entity in question knows or should know:
"(a) Is, or will be, the subject of action by the governmental entity.
"(b) Is one to which the governmental entity is or will be a party.
"(c) Is one in which the governmental entity has a direct interest. A transaction involving the agency of a governmental entity shall have the same meaning with respect to the agency."
The Commission contends that plaintiff's conduct in this case constituted participation in a transaction involving the vocational-technical school in violation of Section 1112 A. The Commission argues that the transaction, by which plaintiff used employees under his supervision to do his personal work, involved the governmental entity because there was uncontroverted evidence that plaintiff on several occasions removed an employee from classes she was teaching in order to work on his projects. The Commission alternatively argues that Section 1112 A contains no requirement of proof that the governmental entity's operations were affected in any way by the public servant's participation in the transaction in which he had a personal economic interest.
This court has applied Section 1112 in previous cases to transactions involving the public servant and the governmental entity he was serving. In In re Beychok, 495 So.2d 1278 (La.1986), this court found a violation of Section 1112 when the president, chief executive officer and majority stockholder of a baking company, who was also a member of the Board of Supervisors of Louisiana State University, entered into a contract with the university for the sale of food products.[6] Because the Board had the duty to oversee the operations of the university system and the acquisition of goods and services was a transaction over which the Board had general supervision, a potential conflict of interest arose when the company operated by the Board member contracted with the university for the sale of food products.
The case of Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983), involved a member of the Mineral Board. The Board's duties included the administration of the state's proprietary interest in minerals and the authority to lease state lands for development of minerals. The Board member was also the president, chief executive officer and sole stockholder of a steel company that sold products on a non-bid negotiated basis to mineral lessees of state-owned lands. This court held that the public servant's company's receiving of private compensation from the state's mineral lessees, when the Mineral Board had direct control over the leases involved, presented the danger of an *275 undue influence on the public servant's official dealings with the mineral lessees.[7] See also Williams v. Board of Ethics for Elected Officials, 457 So.2d 772 (La.App. 1st Cir.1984), cert. denied, 460 So.2d 611 (1984).
The objective of the prohibition in Section 1112 is to prevent a potential or actual conflict of interest from developing when the public servant deals with his particular governmental entity in a transaction in which he knows he (or the legal entity in which he is concerned) has a substantial personal economic interest. The transaction in the Beychok case involved contracts and business dealings between the public servant (or his legal entity) and the servant's governmental entity which created a potential conflict of interest between the servant's personal economic interest and the performance of his official duties. The asserted transaction in the present case was plaintiff's use of school employees and equipment to type his master's thesis for his personal benefit. This transaction was not a contract, proceeding, business dealing or particular matter involving the governmental entity in the performance of its duties and functions, which created a conflict of plaintiff's private economic interest with his interest in performing his duties for the governmental entity. Therefore, the conduct in the present case, although possibly violative of other sections of the Code, did not constitute participation in a transaction involving the governmental entity contemplated by La.R.S. 42:1112 A.[8]
Accordingly, the judgment of the court of appeal is set aside, and the charges of violating La.R.S. 42:1112 A are dismissed.
DENNIS, J., concurs in the result.
NOTES
[1] La. Const. art. X, § 21 directed the Legislature to "enact a code of ethics for all officials and employees of the state and its political subdivisions...." Pursuant to this mandate, the Legislature enacted the Code of Governmental Ethics, La.R.S. 42:1101 et seq.
[2] La.R.S. 42:1120 (the exception contained in Section 1112 A) requires an elected official to recuse himself from voting on a matter in which the vote would violate Section 1112, but provides a method by which the official may be allowed to vote under certain circumstances.
[3] La.R.S. 42:1142 A provides for a direct appeal to the court of appeal from an order by the Commission.
[4] Because the Commission failed to seek certiorari in order to change that portion of the appellate court's judgment which set aside the finding of a violation of Section 1116, the only matter before this court is the alleged violation of Section 1112 A, which was raised by plaintiff's application for certiorari. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971); 9 Moore's Federal Practice ¶ 204.11[3] (2d ed.1948). Nothing in this opinion should be construed as approval of the determination by the court of appeal that plaintiff's conduct did not violate Section 1116.
[5] Other policy objectives of the Code include "impartiality, fairness and equality of treatment toward those dealing with government; assurance that decisions of public importance will not be influenced by private considerations; maintenance of public confidence in government (wherein enters the matter of appearances); and prevention of use of public office for private gain". Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 755 (La.1983).
[6] The Beychok case involved Sections 1112 B(2) and (3), which provide:

"B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
. . . . .
"(2) Any person in which he has a substantial economic interest of which he may reasonably be expected to know.
"(3) Any person of which he is an officer, director, trustee, partner, or employee."
[7] Section 1112 B(5) was involved in the Glazer case. Although this section was not specifically discussed in the opinion because the Commission did not reurge its finding of a violation of this section, the similar problems of potential conflicts of interest were clearly present and extensively discussed.
[8] Whether plaintiff's conduct violated Section 1116 was decided by a definitive judgment of the court of appeal. La.C.C.P. art. 1973; La.C.C. art. 3556(31). That question is not before this court, and plaintiff was not charged with any other violations.