GAIDRY, J.
| ¡¡This is an appeal of a summary judgment determining the merits of an action for declaratory judgment seeking the interpretation of a local government law. For the following reasons, we reverse the summary judgment.
FACTUAL AND PROCEDURAL BACKGROUND
The following relevant facts are undisputed. The plaintiff-appellant, Lorri Burgess, is a member of the Metropolitan Council of the consolidated government of the City of Baton Rouge, Parish of East Baton Rouge (the City-Parish), representing District 10. The Metropolitan Council is the governing body of the City-Parish. The City-Parish’s consolidated form of government was authorized by constitutional amendment in 1946, and its Plan of Government was subsequently adopted by referendum of its voters, effective January 1,1949.
The City-Parish’s Plan of Government contemplates that the Metropolitan Council shall be presided over by a President Pro Tempore, one of its members, who also acts as acting Mayor-President in the event of that executive officer’s absence or disability or the temporary vacancy of that office. The President Pro Tempore has historically received compensation, fixed by ordinance after each election, for serving as acting Mayor-President. From 1981 to 1997, the President Pro Tempore received per diem payments. Since 1997, the President Pro Tempore has been compensated by a monthly salary of $1,500.00 while acting as Mayor-President.[1]
|sOn March 9, 1993, the Louisiana Attorney General issued an opinion at the request of the East Baton Rouge Parish Attorney. La. Atty. Gen. Op. No. 93-141 (1993). The issues addressed included whether Section 2.05 of the Plan of Government prohibited the receipt of additional compensation by the President Pro Tempore while acting as Mayor-President and whether Section 2.10 prohibited a Council member from voting for himself for the position of President Pro Tempore. The opinion answered both questions in the negative.
Ms. Burgess was elected to a four-year term as President Pro Tempore in January 2001, and voted as a Council member in that election. She intended to seek that position again in January 2005 after being reelected as Council member. The Parish Attorney for East Baton Rouge Parish then issued an advisory opinion in Decem *1130 ber 2004 stating that unless any existing salary or per diem for the President Pro Tempore was eliminated (or “set as $0”) prior to the election, Section 2.10 as written prohibited candidates for President Pro Tempore from voting for themselves in the election.
Ms. Burgess instituted this action on December 17, 2004, naming the City-Parish and the district attorney as defendants, setting forth the essential facts described above, and seeking a declaratory judgment “as to whether a[C]ouncil member who casts a vote for himself in the election for President Pro Tempore violates the provisions of Section 2.10 of the Plan of Government and [is] subject to prosecution and forfeiture of his office.” The defendants separately answered the petition, admitting all of the factual allegations, but praying for dismissal of the petition on its merits.
On January 3, 2005, after being nominated for the position, Ms. Burgess voted for herself, but neither of the two candidates received the | ¿majority necessary for election. An election was again attempted on January 12, 2005, but again no candidate was elected.
On January 18, 2005, the Louisiana Board of Ethics issued an opinion, at the request of another Council member, on the propriety of a Council member voting for himself in the election for President Pro Tempore. It concluded that such a vote was improper, but did not provide any reasons or authority for that conclusion in the opinion letter.
On January 21, 2005, an unincorporated association of East Baton Rouge Parish citizens (procedurally designated as “A6”) intervened in the proceedings, seeking a declaratory judgment that Ms. Burgess had violated Section 2.10 and thereby forfeited her office in the Metropolitan Council under the terms of that provision. Ms. Burgess excepted to the petition on various grounds, including the intervenor’s lack of procedural capacity.
The City-Parish filed a motion for summary judgment on the merits, as did Ms. Burgess. The cross-motions were heard on May 9, 2005, as were Ms. Burgess’s exceptions to A6’s petition of intervention. The trial court sustained Ms. Burgess’s declinatory exception objecting to A6’s procedural capacity, and dismissed its intervention.[2] At the conclusion of the summary judgment hearing, the trial court ruled in favor of the City-Parish, granting summary judgment in its favor, declaring that Section 2.10 prohibits a Metropolitan Council member from voting for himself in the election of President Pro Tempore.
| fjThe trial court’s judgment incorporating its rulings was signed on August 17, 2005. Ms. Burgess has suspensively appealed.[3]
*1131 STANDARD OF REVIEW
The judgment before us is a summary judgment rendered in an action for declaratory judgment. Louisiana Code of Civil Procedure article 1871 provides that a declaratory judgment “shall have the force and effect of a final judgment or decree.” Louisiana Code of Civil Procedure article 1877 further provides that declaratory judgments “may be reviewed as other orders, judgments, and decrees.” Thus, this summary declaratory judgment is subject to the usual de novo review as to whether summary judgment was appropriate. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, p. 5 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 828, writs denied, 04-2314, 04-2323, 04-2326, 04-2327 (La.11/19/04), 888 So.2d 207, 211, 212.
As stated above, the facts in this matter are undisputed. The resolution of this matter is solely dependent upon our determination of the legal issue presented. Our review of that issue of law is likewise de novo.
DISCUSSION
The provision of the City-Parish’s Plan of Government at issue is Section 2.10, entitled “Members of Councils ⅛⅛ ] Interested in Proposed Ordinance or Resolution [-] Duty to [Rjefrain From Voting,” and reads as follows:
Any member of the Metropolitan Council who shall have any personal or private pecuniary interest in the adoption or passage of any ordinance, resolution, motion or measure, by the Council, shall declare such fact to said body, and shall refrain from voting on the same at any time, whether on final passage Ror otherwise. Any person who shall violate the above provision shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding one hundred dollars, or imprisonment for not more than sixty days, or both fine and imprisonment, at the discretion of the court, and shall forfeit his office.
The obvious purpose of the foregoing provision is to require a Metropolitan Council member to recuse himself from voting on any matter involving a conflict of interest by reason of that member’s “personal or private” financial benefit from its adoption or passage. The ultimate legal issue presented is whether the additional salary or compensation for a Council member serving as President Pro Tempore of the Metropolitan Council constitutes a “personal or private pecuniary interest” within the meaning of Section 2.10, requiring any Council member seeking that position to refrain from voting in the election.
The position of President Pro Tempore is a special position or office, distinct from the ordinary office of Metropolitan Council member. Immediately after taking office, the first duty of the members of a newly-elected Metropolitan Council is “to elect one of their own number to be a President Pro Tempore for a term of four years.” Plan of Government, City of Baton Rouge, Parish of East Baton Rouge, § 2.07.[4] The duties of the President Pro Tempore are set out in Section 4.05:
The President Pro-Tempore [sic ] shall preside over the meetings of the Metropolitan Council with the right to *1132 speak and to vote. If the Mayor-President is absent from the Parish and City or otherwise temporarily disabled from performing his duties the President Pro-Tempore [sic] shall act as Mayor-President and in the case of a vacancy in the office of Mayor-President shall serve as such until the vacancy is filled as hereinafter provided.
|7Section 2.03 of the Plan of Government provides, in part, that “[n]o member of the Metropolitan Council ... shall, while he holds such office, hold any other office of profit under the United States, the State of Louisiana or any political subdivision thereof,” with limited exceptions. Section 2.05 further provides that “[t]he salary of each councilman shall be $800.00 per month[,]” and that “[ejxcept for travel allowances authorized by law, the members of the Metropolitan Council shall receive no other compensation.”
At first glance, these provisions might seem to preclude the payment of any compensation or remuneration for the position of President Pro Tempore, and Section 2.03 might even be read to preclude any Council member from serving in that position if it constitutes an “office of profit.” In fact, the trial court made the former observation in its oral reasons for judgment, stating that because Section 2.10 was enacted before provision was made for additional compensation for the President Pro Tempore, it would be necessary to “amend the Plan of Government” (presumably Section 2.03) to allow a candidate for President Pro Tempore to vote in that election.
However, we do not read Section 2.05 as precluding the receipt of additional compensation by the President Pro Tem-pore while serving in that capacity or as acting Mayor-President; rather, we conclude it is limited to that compensation received while acting in the capacity of Council member.[5] If the contrary interpretation is accepted, however, then we need conduct no further analysis of the issue before us. If no other compensation may legally |sbe received by the President Pro Tempore, then Section 2.10 would not preclude any vote by Ms. Burgess for herself in the election for that position, as no pecuniary interest at all, personal or private or even public, would be involved. Here, however, the legality of any ordinance establishing the President Pro Tem-pore’s salary is not at issue.[6]
The words of a law must be given their generally prevailing meaning. La. C.C. art. 11. The term “private” has been defined as meaning “not holding public office or employment” and “not related to one’s official position,” and in those respects *1133 synonymous with “personal.” Merriam-Webster’s Collegiate Dictionary 927 (10th ed.1998).[7] Thus, the better interpretation of Section 2.10’s adjective phrase “personal or private” is that the adjectives are essentially synonymous, in the sense that they both are meant to limit the pecuniary interest at issue to that relating to or derived in a member’s capacity as a private person, rather than a public officeholder.[8] This result would also best explain the provision’s requirement for disclosure of such interest by the member, as any pecuniary interest in the capacity as Metropolitan Council member, whether by way of public salary or other benefits, should already be immediately evident to the other members by the nature of the particular action or measure being considered.
|flThe foregoing considerations, however, do not conclude our analysis. Section 2.10 serves a purpose similar to those of La. R.S. 42:1120, part of the Louisiana Code of Governmental Ethics, La. R.S. 42:1101, et seq., and La. R.S. 14:140, the criminal statute prohibiting public contract fraud. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.
Louisiana Revised Statutes 14:140 was enacted in 1942, but covered considerations addressed in earlier statutes, including Acts 1906, No. 200, §§ 1 and 2, regulating police jurors and municipal council members voting on ordinances in which they had an interest. Section 2.10 was adopted by referendum in 1949, and has not been amended since that time. In 1964, the original version of the Louisiana Code of Governmental Ethics was enacted. When our present state constitution was adopted in 1974, it authorized existing home rule charters or plans of government to remain in effect “[ejxcept as inconsistent with this constitution.” La. Const. Art. 6, § 4. It further provided that the compensation or method of fixing the compensation of an elected official of a local governmental subdivision with a home rule charter or plan of government is governed by that charter. La. Const, art. 6, § 12. It also included a mandate to the legislature to “enact a code of ethics for all officials and employees of the state and its political subdivisions.” La. Const, art. 10, § 21. The legislature fulfilled that mandate by amending and reenacting the Louisiana Code of Governmental Ethics in its present form in 1979. See La. R.S. 42:1101(A).
The primary objective of the Code of Governmental Ethics is to prevent public officers and employees from becoming involved in conflicts of interest. In re McJunkins, 99-0326, p. 6 (La.App. 1st Cir.3/31/00), 794 So.2d 845, 848. Such a conflict of interest is present “when a conflict exists 1 mbetween the private interests of an elected official ... and his duties as such.” La. R.S. 42:1101(B). (Emphasis supplied.)
Like Section 2.10, La. R.S.42:1120 addresses the issue of when an elected official should recuse himself from voting on a matter in which he arguably has a conflict of interest. This statute requires self-re- *1134 cusation only when the official’s vote on the matter “would be a violation of R.S. 42:1112.” La. R.S. 42:1120(A).
Louisiana Revised Statutes 42:1111(A)(1), addressing payment of a public servant’s services from nonpublic sources, generally provides that “[n]o public servant shall receive anything of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position .... ” (Emphasis supplied.) In line with that general principle, a “thing of economic value” is generally defined as “money or any other thing having economic value,” La. R.S. 42:1102(22)(a), but specifically excludes “salary and other emoluments of the office held by [an] elected official.” La. R.S. 42:1102(22)(c).[9]
Louisiana Revised Statutes 42:1112(A) further provides that “[n]o public servant, except as provided in R.S. 42:1120, shall participate in a transaction in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity.” (Emphasis supplied.) A “substantial economic interest” is defined in La. R.S. 42:1102(21):
|¶1(21) “Substantial economic interest” means an economic interest which is of greater benefit to the public servant or other person than to a general class or group of persons, except:

(a)The interest that the public servant has in his position, office, rank, salary, per diem, or other matter arising solely from his public employment or office.

(b) The interest that an elected official who is elected to a house, body, or authority has in a position or office of such house, body, or authority which is required to be filled by a member of such house, body, or authority by law, legislative rule, or home rule charter.
(c) The interest that a person has as a member of the general public. (Emphasis supplied.)[10]
The position or office of President Pro Tempore is required to be filled by a member of the Metropolitan Council, and its additional salary or compensation would therefore amount to an “interest ... in ... [a] matter arising solely from [the member’s] public employment or office.” Thus, Ms. Burgess’s interest in that position or office is plainly not a “substantial economic interest” within the meaning of either La. R.S. 42:1102(21)(a) or (b), and certainly cannot be considered “personal,” in the sense of arising outside of her public office. Thus, any participation by Ms. Burgess in a vote to elect the President Pro Tempore while a candidate for that position would not constitute a violation of La. R.S. 42:1112, nor, by extension, a violation of La. R.S. 42:1120.
Louisiana Revised Statutes 14:140 defines the crime of “public contract fraud,” and provides in part:
A. Public contract fraud is committed:
*1135 (1) When any public officer ... shall use his power or position as such officer ... to secure any expenditure of public funds to himself ...; or
(2) When any member of any public ... body ... charged with the custody, control, or expenditure of any public l^funds votes for or uses his influence to secure any expenditure of such funds to himself ...
[[Image here]]
The fact that an expenditure has been made to any party named in Paragraphs (1) and (2) of this Section ... shall be presumptive evidence that such person has used his power, position, or influence to secure such expenditure.
The present case does not involve the situation of an elected public servant participating in a vote to engage his own services as a public employee or private contractor of the governing body of which he is a member. It is doubtful whether the vote of an elected municipal official in the election of the municipal governing body’s presiding officer amounts to the type of “public contract” or transaction contemplated by La. R.S. 14:140. Prior opinions of the Louisiana Attorney General have suggested that a member of a local governing body or board casting a vote for himself to fill another appointive office or public employment position might implicate La. R.S. 14:140. See, e.g., La. Atty. Gen. Op. Nos. 76-1895 (1977), 79-1089 (1979). However, none have involved the context of the present dispute, other than Opinion No. 93-141.[11] At any rate, Attorney General opinions are merely advisory and not binding. City of New Orleans v. Bd. of Dir. of La. State Museum, 98-1170, p. 6 n. 11 (La.3/2/99), 739 So.2d 748, 753 n. 11. To the extent that these opinions constitute persuasive authority for our purposes, we consider them limited to their specific contexts.
If the participation of a candidate for President Pro Tempore in a vote in the election for that position is not a violation of La. R.S. 42:1112, then |ialogic dictates that it would also not constitute a violation of La. R.S. 14:140, a criminal and penal statute subject to strict interpretation, and that any statutory presumption arising from the expenditure would thereby be rebutted. Otherwise, an anomalous situation would exist where a public official’s conduct would be ethical, yet also criminal, instead of the more common situation where unethical conduct may not in fact amount to an actual crime.[12] While La. *1136 R.S. 42:1164 does provide that nothing in the Code of Governmental Ethics is intended or is to be construed as amending or repealing any criminal statute, La. R.S. 14:3 requires that all criminal statutes “shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” (Emphasis supplied.) Thus, in the context of the circumstances presented, it would be reasonable to conclude that no violation of La. R.S. 14:140 would be involved in the vote at issue.
Interpreting Section 2.10 as part of a unified, comprehensive Plan of Government, and considering its purposes in light of Louisiana law in pari materia, including our laws governing dual officeholding and governmental ethics, we determine that the salary of the President Pro Tempore is not a “personal or private pecuniary interest,” and that Section 2.10 does not 114require Ms. Burgess to refrain from voting in the election of the Metropolitan Council’s President Pro Tempore, whether on final passage or otherwise.[13] The trial court’s summary judgment to the contrary is hereby reversed. All costs of this appeal, in the amount of $595.12, are assessed to the defendant-appellee, the City of Baton Rouge, Parish of East Baton Rouge.
REVERSED.

. Ordinance No. 10804 fixed that salary for the four-year period from January 1, 1997 through December 31, 2000. The same salary was in place during the next four-year period, and was incorporated in the City-Parish’s pay plan adopted on December 11, 2002 by Ordinance No. 12533.

. A6 had also instituted a separate declaratory judgment action against the other candidate for President Pro Tempore on the same legal issue asserted in its petition of intervention. That action was consolidated for trial with the present action, and was dismissed by separate judgment signed on June 7, 2005.

. Although the judgment is silent as to the court’s disposition of Ms. Burgess's cross-motion, the trial court in its oral reasons ruled that it would deny her motion. A6 instituted a devolutive appeal of the trial court's judgment dismissing its petition of intervention. Its appeal was consolidated with the present appeal. However, its appeal was dismissed for its failure to timely submit its appellate briefs in accordance with Rules 2-8.6 and 2-12.7 of the Uniform Rules of the Courts of Appeal.

. A Metropolitan Council member serving as the Council's President Pro Tempore thus falls within two of the specific exemptions to the general prohibition against dual office-holding. See La. R.S. 42:66(A)(7), (D).

. The Attorney General reached the same conclusion in Opinion No. 93-141: “We interpret Section 2.05 as contemplating that a [C]ouncil member is prohibited from receiving additional monies for serving in the position of [C]ouncil member. We do not interpret this section to prohibit the President Pro-Tempore from receiving compensation for serving in the separate position of Acting Mayor.” La. Atty. Gen. Op. No. 93-141 (1993).

. Ordinance No. 12533, enacted on December 11, 2002, established a job code classification and salary pay grade of $1,500.00 per month for the President Pro Tempore. It was repealed on February 23, 2005, prior to the hearing on the motions for summary judgment. Thus, it would no longer have presented a justiciable controversy even if it had been placed at issue. However, the record suggests that the salary of $1,500.00 per month was still budgeted at the time of the hearing. We proceed on the assumption that a salary may be paid in the future, based upon the history evident from the record.

. Likewise, in a legal sense, the term ''private” is defined as "[r]elating or belonging to an individual, as opposed to the public or the government.” Black’s Law Dictionary 1233 (8th ed.2004).

. The phrase’s use of the conjunctive "or” supports this interpretation, as well as the fact that the terms “personal” and “private” are considered synonymous in ordinary usage. Merriam-Webster's Collegiate Dictionary 867, 927 (10th ed.1998).

. An emolument is defined as "[a]ny advantage, profit, or gain received as a result of one's employment or one's holding of office.” Black's Law Dictionary 563 (8th ed.2004). Any additional salary received by the Metropolitan Council member serving as President Pro Tempore is clearly an additional emolument of office, and thus exempt from the prohibitions of La. R.S. 42:1111 against payments from nonpublic sources and payments for nonpublic services.

. As amended by Acts 2006, No. 408, § 1, effective June 22, 2006.

. In his Opinion No. 93-141 in 1993, the Attorney General observed that at the time of the election of the President Pro Tempore, no authorization for compensation existed, and such compensation was provided by ordinance after the election. He further observed that "[a] decision by the [Cjouncil to forego compensation would effectively remove the objection predicated on Section 2.10.” La. Atty. Gen. Op. No. 93-141 (1993). Based upon those observations, he concluded that a Council member could vote for himself in the election for President Pro Tempore without violation of Section 2.10.

. When Louisiana’s statutes were comprehensively revised and reorganized as the Louisiana Revised Statutes, the official Reporter noted the following:
While it may be desirable to have civil statutes regulating the extent to which public officials may be interested in public contracts, it appears to be going too far to say that such interest is per se criminal. A civil statute might well provide that such contracts would be illegal and that the making of such a contract would be grounds for removing the interested official from office. The Reporters are not, however, authorized to draft such civil statutes.
La. R.S. 14:140, Reporter's Comment — 1950, "General Comment.”

. Our resolution of the issue reconciles any potential conflict between the provisions of Section 2.10 and La. R.S. 42:1120. It could otherwise be reasonably argued that Section 2.10, to the extent that it might contravene the latter statute, was preempted in effect upon the adoption of our present constitution and the enactment of La. R.S. 42:1120. See La. Const. art. 6, § 9(B) and Boh Bros. Constr. Co., Inc. v. City of New Orleans, 499 So.2d 385 (La.App. 4th Cir.1986). However, we need not make such determination given the basis for our decision described herein.